**Waverly H. HOBSON, III**

v.

**E. W. MURRAY, Superintendent.**

**Civ. A. No. 79–0014–R.**

United States District Court,
E. D. Virginia,
Richmond Division.

March 11, 1980.

Waverly H. Hobson, III *pro se.*

Thomas D. Bagwell, Asst. Atty. Gen. of Va., Richmond, Va., for defendant.

## MEMORANDUM

WARRINER, District Judge.

This matter is before the Court on a petition for federal habeas corpus relief

from the judgment of a State court pursuant to 28 U.S.C. § 2254 (1977).

Petitioner was convicted on 4 January 1978, in the Circuit Court of Chesterfield County, Virginia, of a simple assault and of a felony escape. On the charge of simple assault, the petitioner was sentenced to twelve months in jail; on the charge of felonious escape, the petitioner was sentenced to one year in the penitentiary. The escape charge was prosecuted as a felonious escape under Va.Code § 53–291(2) (Repl. Vol.1978)[1] rather than as a misdemeanor escape under Va.Code § 18.2–478 (Repl.Vol. 1975).[2] The State trial judge convicted and sentenced the petitioner under the felony escape statute, overruling petitioner's timely motion to strike the evidence. The basis for petitioner's motion to strike was that the Commonwealth had failed to prove the facts necessary to support such a conviction; specifically, the petitioner asserted that the Commonwealth had failed to prove that the Chesterfield County Jail from which the petitioner had attempted to escape was in fact a "penal institution operated by the Department of Corrections. . . .." *See* Va.Code § 53–291(2), *supra.* In his petition for a writ of error to the Supreme Court of Virginia, the petitioner-appellant again raised this same ground as the basis for the reversal of the State trial judge. This petition was denied by the Supreme Court of Virginia, following which the petitioner filed the instant petition for federal habeas relief with this Court.

Between the time that petitioner tendered his petition for federal habeas relief and the present, the petitioner fully served the term of his State conviction on these charges.[3]

Petitioner asserts two claims as a basis for the requested relief. First, the petitioner asserts that the Commonwealth's election to prosecute the petitioner under the felony escape statute rather than under the equivalent misdemeanor statute was an abuse of prosecutorial discretion amounting to a deprivation of the petitioner's right to the equal protection of the laws secured by the Fourteenth Amendment to the United States Constitution. Secondly, and following from the first claim, the petitioner asserts that his conviction under the felony escape statute rather than under the equivalent misdemeanor statute was itself a violation of the Equal Protection Clause of the Fourteenth Amendment, in that the Commonwealth failed to prove every element required to support the felony conviction. The Court will treat the petitioner's allegations as stating a claim for relief under the Due Process Clause of the Fourteenth Amendment rather than as asserting an equal protection claim. *Gordon v. Leeke,* 574 F.2d 1147, 1151–2 (4th Cir.), *cert. de-*

---

**1.** Section 53–291 provides, in pertinent part, that:

> It shall be unlawful for an inmate in a penal institution as defined in § 53–19.18 or in the custody of an employee thereof to do any of the following:
>
> (2) To escape from such penal institution operated by the Department of Corrections or from any person in charge of such inmate

Va.Code § 53–291(2) (Repl.Vol.1978).

Section 53–19.18 provides, in pertinent part, that:

> The term '*correctional institution*' or '*penal institution*' as used in this title means and includes every prison, prison camp, prison farm, correctional field unit, community correctional facility, halfway house or other place used for incarceration or detention heretofore or hereafter established with funds appropriated from the State treasury, and every jail, jail farm, lockup, or other place of detention owned, maintained or op-

erated by any political subdivision of the Commonwealth. . . .

Va.Code § 53–19.18 (Repl.Vol.1978).

**2.** Section 18.2–478 provides, in pertinent part, that:

> If any person lawfully imprisoned in jail and not tried or sentenced on a criminal offense escape from jail by force or violence, other than by setting fire thereto or if any person lawfully in the custody of any police officer on a charge of criminal offense escape from such custody by force or violence, he shall be confined in jail not exceeding twelve months.

Va.Code § 18.2–478 (Repl.Vol.1975).

**3.** *See Hobson v. Murray,* No. 79–0014, slip op. (E.D.Va. Dec. 7, 1979), for a discussion of jurisdictional and mootness issues. The Court, in that Memorandum opinion, held that it had jurisdiction to consider the merits, if any, of the petition and that the issues raised by the petition were not moot.

*nied,* 439 U.S. 970, 99 S.Ct. 464, 58 L.Ed.2d 431 (1978). As only issues of law are raised by the claims asserted by the petitioner, the Court will not hold an evidentiary hearing but will instead pass directly to a consideration of the substance of petitioner's claims. *Barker v. Ohio,* 330 F.2d 594 (6th Cir. 1964).

## I

█ Regarding the petitioner's claim of prosecutorial abuse in the Commonwealth's election to prosecute the felony charge as opposed to the misdemeanor charge, it is apparent from an examination of petitioner-appellant's brief on appeal, tendered before this Court as an exhibit, that this claim was not raised before the Supreme Court of Virginia. Petitioner has thus not exhausted his State remedies and this claim will therefore be DISMISSED. *Pitchess v. Davis,* 421 U.S. 484, 487, 95 S.Ct. 1748, 1751, 44 L.Ed.2d 317 (1975).

## II

█ The Court will now move to petitioner's challenge to the sufficiency of the proof adduced by the Commonwealth at trial to support the above-described felony conviction.[4] As noted above, the petitioner made a timely motion to strike the evidence on the ground that the Commonwealth had failed to carry its burden of proof.[5] The State trial judge denied this motion, convicted the petitioner of the felony offense, and imposed a felony sentence accordingly. The Supreme Court of Virginia thereafter denied the petitioner-appellant's petition on this issue for writ of error, which ruling is considered by that body to be a decision upon the merits. *Saunders v. Reynolds,* 214 Va. 697, 700, 204 S.E.2d 421, 424 (1974). Thus, the petitioner has presented this claim to the Supreme Court of Virginia on direct appeal from his criminal conviction, therefore the exhaustion requirements have been met as to this claim. *Pitchess v. Davis, supra.*

█ In considering a petition for federal habeas corpus relief from a State criminal conviction on the grounds of sufficiency of the evidence, this Court is guided by the standards enunciated by the Supreme Court in *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).[6]

Thus, given the facts of the instant case, the appropriate analysis for the Court is to determine whether *"any* rational trier of fact could have found the essential elements of the crime [of felony escape] beyond a reasonable doubt." *Jackson v. Vir-*

---

4. The petitioner, as noted in the text, was convicted of a felony escape charge following an unsuccessful escape attempt from the Chesterfield County Jail.

5. *See* Tr. p. 36–41. In response to that motion the prosecution cited the case of *Mason v. Commonwealth,* 217 Va. 321, 228 S.E.2d 683 (1976). In *Mason* the Supreme Court of Virginia held that § 53–291(2), the felony escape provision, adequately supported the felony conviction of a prisoner charged with escaping from a lockup maintained by the City of Hampton, Virginia despite the fact that at the time of the offense the prisoner had only been charged with a criminal offense and had not been convicted. The Supreme Court of Virginia applied the Code provision in effect in 1974; § 53–291(2) was amended by the Virginia General Assembly in 1975, 1977, and 1978. *See* 1977 Va.Acts, ch. 497, p. 740. The 1977 amendment to the Code inserted the phrase "operated by the Department of Corrections" to subdivision (2) of § 53–291.

6. In *Jackson,* the Supreme Court of the United States rejected the "no evidence" standard of *Thompson v. Louisville,* 362 U.S. 199, 206, 80

S.Ct. 624, 629, 4 L.Ed.2d 654 (1960), in favor of a more stringent standard for use by federal courts in considering a "sufficiency of the evidence" claim raised by State prisoners on petition for federal habeas relief. 443 U.S. at 321, 99 S.Ct. at 2790. Instead, considering *"all of the evidence . . .* in the light most favorable to the prosecution," this Court must determine "whether *. . . any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* at 319, 99 S.Ct. at 2789 (emphasis in original). Thus,

> if the settled procedural requisites for such a claim have otherwise been satisfied—the applicant [for federal habeas relief pursuant to 28 U.S.C. § 2254] is entitled to . . . relief if it is found that upon the record evidence adduced at the trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt.

*Id.* at 324, 99 S.Ct. at 2792. *See In re Winship,* 397 U.S. 358, 360–64, 90 S.Ct. 1068, 1070–72, 25 L.Ed.2d 368 (1979).

**1344**

*ginia, supra* at 319, 99 S.Ct. at 2789. The Due Process Clause of the Fourteenth Amendment protects a criminal defendant from conviction "except upon *proof beyond a reasonable doubt of every fact necessary to constitute the crime* with which he is charged." *Id.* at 315, 99 S.Ct. at 2787, *quoting In re Winship, supra* 397 U.S. at 364, 90 S.Ct. 1072 (emphasis supplied). Thus, by the terms of the Virginia statute, a felony escape charge is made out when the Commonwealth has proven that "an inmate in a penal institution . . . or in the custody of an employee thereof . . . [has escaped] from such penal institution operated by the Department of Corrections or from any person in charge of such inmate . . . ." Va.Code § 53–291(2), *supra*.

At trial, the State judge received testimony as to the attempted escape of the petitioner from the Chesterfield County Jail.[7] Two deputy sheriffs of the Chesterfield County Sheriff's Department testified as to the facts surrounding the escape attempt by the petitioner. No evidence was introduced which addressed the operation of the Chesterfield County Jail. The issue is thus whether the prosecution proved beyond a reasonable doubt that the petitioner attempted to escape from a "penal institution operated by the Department of Corrections or from any person in charge of such inmate . . . ." *Id.*

■ The petitioner in his attempted escape sought to remove himself from pretrial confinement at the jail facility in Chesterfield County; the petitioner thus was not escaping "from . . . [a] person in charge of such inmate. . . ." *Id.* This conclusion is supported by an examination

of the introductory clause of the statute and a comparison of that clause with subsection two. As an introduction to the body of the text, the statute provides that "[i]t shall be unlawful for an inmate in a penal institution . . . or in the custody of an employee thereof to do . . . the following . . . ." *Id.* At this point, the statute is clearly applicable to inmates in all penal institutions, as defined, or in the custody of the employees of these institutions. Subsection two of the statute, however, limits the felony escape offense to an inmate who has escaped "from . . . [a] penal institution operated by the Department of Corrections or from any person in charge of such inmate . . . ." *Id.* While it is certainly far from precise, the Court will decline to interpret the second clause of subsection two more broadly than its terms indicate; rather, the Court holds that the second clause of subsection two is applicable only to inmates charged with escaping or with an attempted escape from persons in charge of such inmates who are themselves employees of the type of penal institution for which the felony escape subsection is established: to-wit, employees of penal institutions operated by the Department of Corrections. Thus, under either clause of § 53–291(2), the statute demands proof that the institution from which the inmate escaped was operated by the Department of Corrections. The Court must thus examine the significance of that limitation.

Section 53–191(2) has not been construed in a reported decision following the 1977 amendment enacted by the Virginia General Assembly.[8] Having no guidance in the

---

7. Tr. at 14–33.

8. The version of this statute in use prior to the 1977 amendment had been authoritatively construed. *Mason v. Commonwealth, supra.*

A federal decision handed down before *Mason* had distinguished the Virginia felony and misdemeanor escape statutes on the basis of the:

nature of the confinement . . . [i]f the offender had been assigned to and later escapes from the direct custody of the state penitentiary system or its agents the felony statute applies. The lesser statute involves cases where the offender is not in the custo-

dy of the state penitentiary system, as where he is assigned to and escapes from jail, or where he escapes from a jail, police officer or officer of the court at any time, including trial, prior to a judgment on the charge against him.

*Wood v. Cox*, 333 F.Supp. 1064, 1066 (W.D.Va. 1971). *Wood*, having been decided before *Mason, supra*, is of course not controlling. *Nature Conservancy v. Machipango Club, Inc.*, 579 F.2d 873, 875 (4th Cir.), *cert. denied*, 439 U.S. 1047, 99 S.Ct. 724, 58 L.Ed.2d 706 (1978).

In the instant case, however, the statute in issue was amended by the Virginia General Assembly after the decision by the Supreme

task of assessing the significance of the 1977 amendment to this statute, such as legislative history or explicit statutory definition, the Court will examine the particular statute in the context of the related Code provisions in which it stands. *See American Society of Travel Agents v. Blumenthal*, 184 U.S.App.D.C. 253, 271, 566 F.2d 145, 163 (D.C.Cir.1977) (Bazelon, C. J. dissenting), *cert. denied*, 435 U.S. 947, 98 S.Ct. 1533, 55 L.Ed.2d 546 (1978).

The Department of Corrections was established in 1974, and together with the Board of Corrections (Board) and the Director of the Department of Corrections (Director) it replaced the former Department of Welfare and Institutions and Director of the Department of Welfare and Institutions. Va.Code § 53–19.5 (Repl.Vol. 1978). The Board of Corrections is authorized to promulgate rules relating to

the preservation of the property at, and the health of the convicts in, the penitentiary, and all other penal institutions

. . . .

Va.Code § 53–23 (Repl.Vol.1978).[9] The Director is charged with enforcing the laws and regulations governing penal institutions within the State of Virginia. Va.Code § 53–19.8 (Repl.Vol.1978); *Payne v. Rollings*, 402 F.Supp. 1225, 1228 (E.D.Va.1975). The Director possesses full control of all existent State correctional institutions as defined by § 53–76 and is empowered to establish additional State correctional institutions as are deemed necessary. Va.Code §§ 53–76, 76.1 (Repl.Vol.1978). All persons convicted of a felony in the circuit courts of Virginia and who receive a penitentiary sentence are thereafter committed into the custody of the Director. Va.Code § 53–76.3 (Repl.Vol.1978). Depending upon the length of sentence which has been imposed and the prisoner's medical examination, the prisoner is then assigned to the appropriate State penitentiary or correctional institution. Va.Code § 53–47 (Repl.Vol.1978 & Supp.1979).

In contrast to this pattern of virtually exclusive control by the Director or the Department of Corrections over the establishment and maintenance of State penitentiaries and correctional institutions, those portions of the Virginia Code which address the establishment and maintenance of city or county jails, delegate the operation of these latter institutions to the primary authority of the local governing body of such city or county. Va.Code § 53–129 *et seq.* (Repl.Vol.1978 & Supp.1979). Section 53–133.2 does provide, in pertinent part, that

[o]ne or more cities, counties or towns, or any combination thereof, are authorized, pursuant to agreement with the Board, to construct jail facilities on land owned by the Commonwealth. . . . Such counties, cities, towns, or combination thereof *may enter into agreements with the Department of Corrections for the Department to operate such jail . . ..*

Va.Code § 53–133.2 (Repl.Vol.1978) (emphasis supplied). Thus, the clear inference is that absent such an agreement between a city or county and the Department of Corrections, the jail of the given city or county is operated by that political subdivision. The Board is under a statutory mandate:

to prescribe minimum standards for the construction and equipment of local jails . . . whether heretofore or hereafter established, and [to prescribe] minimum requirements for the feeding, clothing, medical attention, attendance, care, segregation and treatment of all prisoners confined in such jails,

Va.Code § 53–133 (Repl.Vol.1978), but the sheriff of each county or city is himself the "keeper of the jail thereof." Va.Code § 53–168 (Supp.1979).[10] The sheriff of the

---

Court of Virginia in *Mason* and the amended portion has not subsequently been construed by that court. Thus, this Court must "apply the [statutory] law of Virginia as . . . [this Court predicts it] would be applied by the Supreme Court of Virginia were the case before it." *Id.* at 875.

**9.** *See* note 1, *supra,* for the statutory definition of "penal institution."

**10.** The word "jail" as used in [§ 53–168], notwithstanding any contrary provision of law, general or special, shall include all facilities of each county and city . . . in which adults are detained because they have been charged with or convicted of violations of law . . . .

Va.Code § 53 168, *supra.*

city or county in question is thus charged with obtaining all necessary foodstuffs, provisions, clothing and medicine as is necessary for jail prisoners. Va.Code § 53–175 (Repl.Vol.1978). Significantly,

> [i]f any sheriff . . . fails to comply with the requirements of the . . . Board of Corrections in the *operation and management of any jail or jails under his control or management,* the Board shall file a complaint with the judge of the circuit court of the county or city in which such jail is located . . . .

Va.Code § 53–173 (Repl.Vol.1978) (emphasis supplied).

■ This examination of the statutory framework of correctional facilities and jails leads the Court to conclude that city or county jails housing persons charged with the commission of criminal offenses but who have not yet been convicted, are not in fact penal institutions operated by the Department of Corrections but rather are penal institutions operated by the sheriff of the particular city or county, excepting the situation where the local governing body has entered into an agreement with the

Department of Corrections pursuant to § 53–133.2. This conclusion is buttressed by the specific language of § 18.2–478, which seems clearly to have been applicable to the facts of the instant case.[11] That statute applies to "person[s] *lawfully imprisoned in jail and not tried or sentenced* on a criminal offense . . . or . . . person[s] *lawfully in the custody of any police officer on a charge of criminal offense* . . . ." Va.Code § 18.2–478, *supra* (emphasis supplied). In this case it was stipulated at trial that the petitioner was incarcerated in jail awaiting trial on a felony charge.

The Court therefore holds that the 1977 amendment of § 53–291(2) by the Virginia General Assembly was a significant modification of the statutory law of Virginia rendering *Mason* no longer controlling authority. Therefore proof of operation by the Department of Corrections became an element of the offense of felony escape necessitating proof by the prosecution of this fact beyond a reasonable doubt. *In re Winship, supra.*

■ No evidence was introduced at the trial on this element. On the basis of the

---

The word "keeper" is defined as "[a] custodian, manager, or superintendent; one who has the care, custody, or management of any thing or place. . . ." BLACK'S LAW DICTIONARY 780 (5th ed. 1979). Thus the Sheriff of Chesterfield County was constructively the custodian of the petitioner at the time of his escape attempt. The Court has held in this case that the second clause of § 53–291(2) requires that the "person in charge of . . . [the] inmate" at a "penal institution operated by the Department of Corrections" be employed by such institution. Va.Code § 53–291(2), *supra.* Thus, the fact that the Sheriff of Chesterfield County had constructive custody of the petitioner at the time of the petitioner's attempted escape is irrelevant; the relevant inquiry is whether the Sheriff, having constructive custody of the petitioner, was employed by a "penal institution operated by the Department of Corrections . . . ." *Id.* Manifestly, he is not so employed nor are his deputies. *See* Va.Code §§ 15.1–40.1; 15.1–48 (Supp. 1979).

If, despite the statutory distinction between sheriffs and their deputies, on the one hand, and Department of Corrections employees on the other hand, § 53–291(2) were to be construed as including sheriffs and deputy sheriffs as Department of Corrections employees, then

there would be no means of distinguishing, in the case of unconvicted escapees, between § 53–291(2) and § 18.2–478, the misdemeanor escape statute. The prosecutor would have an option to seek severe or minor punishment with no rational guide to the exercise of his choice. It cannot be assumed the General Assembly intended such unguided options.

**11.** *See* note 2, *supra.*

The Supreme Court of Virginia in *Mason, supra,* observed that:

> nothing in the misdemeanor statute indicates [that] it establishes the exclusive offense for persons who escape before conviction or assignment to the penitentiary system, and *nothing in the felony statute indicates [that] it is applicable only to those who escape after conviction and assignment to the penitentiary system.*

217 Va. at 323, 228 S.E.2d at 684 (emphasis supplied).

Thus, by amending § 53–291(2) in 1977 to its present language, it is apparent to the Court and the holding of the Court accordingly that the intent of the Virginia General Assembly was to renounce the interpretation placed upon this subsection in *Mason,* in favor of the interpretation previously expressed in *Wood v. Cox, supra. See* note 8, *supra.*

evidence which was presented at trial, considering the trial record of the State court proceedings in the light most favorable to the Commonwealth and applying the *Jackson* standard of review, this Court holds that no rational trier of fact[12] could have found proof of the petitioner's guilt beyond a reasonable doubt for reason of the failure of the prosecution to prove an essential factual element of the crime of felony escape. The Court will, therefore, GRANT the petition for habeas corpus on this claim.

█ As represented by the respondents, the petitioner was released by the State as having fully served the sentence imposed upon him on the basis of his challenged conviction, thus traditional federal habeas relief may be inappropriate. The federal courts, however, are not narrowly restricted in fashioning an appropriate remedy on granting a petition for a writ of federal habeas corpus relief. *See Carafas v. Lavallee,* 391 U.S. 234, 238–39, 88 S.Ct. 1556, 1559–60, 20 L.Ed.2d 554 (1968); *Peyton v. Rowe,* 391 U.S. 54, 56–67, 88 S.Ct. 1549, 1550, 20 L.Ed.2d 426 (1968). Instead, upon an application for a writ of habeas corpus, the Court is charged to "hear and determine the facts, and dispose of the matter as law and justice require." 28 U.S.C. 2243 (1977). The Court has previously noted the existence of legal consequences collateral to incarceration which attend a felony conviction in Virginia.[13] The Court has not been advised of the petitioner's status since 31 July 1979, however, and will therefore STAY the issuance of the writ for 60 days during which time the respondents shall advise the Court as to the status of the petitioner and as to what actual relief may be appropriate in this case. *E. g. Scott v. District Attorney, Jefferson Parish, La.,* 309 F.Supp. 833, 835 n. 2 (E.D.La.1970), *aff'd. without opinion,* 437 F.2d 500 (1971). Respondents, report and brief shall be filed no later than 15 days from entry hereof and petitioner may respond in the manner set forth in the accompanying order.

An appropriate order shall issue.

**12.** The holding in *Jackson* puts federal judges in embarrassing positions in ruling on petitions for habeas corpus from criminal convictions of State courts when an issue such as the instant one is presented. *Jackson* requires that we determine whether *"any* rational trier of fact" could have found the defendant guilty beyond a reasonable doubt upon the evidence presented. *Jackson v. Virginia, supra* at 319, 99 S.Ct. at 2789; *see* note 6, *supra.* In every petition for federal habeas corpus *some* trier of fact, a State court judge or jury, *has* found the defendant guilty beyond a reasonable doubt upon the *evidence presented.* Usually there has been an affirmance by the State appellate court or State Supreme Court. It is not unusual that the case has then been brought to the attention of the Supreme Court of the United States without relief. Following exhaustion of direct appeals, State habeas corpus proceedings may have been exhausted. Thus perhaps a dozen presumably rational judges have affirmed, in·one way or another, the guilt of the defendant before the matter is brought forward on federal habeas corpus. If the federal judge then grants the writ he necessarily must have concluded that the trial judge, and inferentially those who had affirmed him, had failed to act rationally, that is, that they had behaved irrationally. This judge is uncomfortable in that position.

In this case let it be said in favor of the trial judge's rationality that when the issue of the absence of evidence on the element of Department of Corrections control arose, the Attorney for the Commonwealth cited to the trial judge apparently controlling and recent authority from the Commonwealth's highest court. The Commonwealth's Attorney did not note, nor did defense counsel, that the General Assembly had amended the statute subsequent to the *Mason* decision so as to negate *Mason*'s authority. Thus the trial judge's decision was perfectly rational under the authority presented to him. Nevertheless under the language of *Jackson* it is necessary that this Court declare that no rational trier of fact could have found defendant guilty beyond a reasonable doubt.

**13.** *See Hobson v. Murray,* No. 79–0014–R, slip op. at 5–6 (E.D.Va. Dec. 7, 1979).