Joseph L. BENTLEY

v.

J. D. COX, Supt. et al.

Civ. A. No. 80–0049–R.

United States District Court,
E. D. Virginia,
Richmond Division.

Feb. 23, 1981.

Bradley S. Stetler, Alexandria, Va., for petitioner.

Thomas D. Bagwell, Asst. Atty. Gen., Richmond, Va., for respondent.

## MEMORANDUM & ORDER

WARRINER, District Judge.

Joseph Lewis Bentley, an inmate confined at the Powhatan Correctional Center, brings this petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. The petitioner, who is represented by counsel, challenges the validity of a judgment of the Circuit Court of Chesterfield County. On 7 October 1977, he was convicted of possession of LSD with intent to distribute and possession of marijuana with intent to distribute. He was sentenced to 10 years on each count.

The petitioner contends that the evidence adduced at trial was insufficient to support both convictions. The respondent acknowledges that petitioner has exhausted his State remedies.

## I.

■ In this action, the petitioner maintains that the evidence presented at trial was insufficient to establish both elements of the offenses charged: (1) possession of a controlled substance and, (2) intent to distribute that substance. The standard of review which this Court must apply to the petitioner's claim is as set forth in *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979):

[T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. [Emphasis in the original].

In *Jackson*, the Supreme Court expressly recognized that the prosecution is not under an obligation to affirmatively disprove every hypothesis except guilt beyond a reasonable doubt. *Id.* at 326, 99 S.Ct. at 2793. Thus conflicting inferences should be resolved in favor of the prosecution. But the proof offered, when considered in its totality, must support a finding of guilt beyond a reasonable doubt with reference to each element of the criminal offense as defined by State law. *Id.* at 324 n.16, 99 S.Ct. at 2792 n.16.

The Court agrees with the petitioner that the proof offered at trial in this case, with respect both to the marijuana and the LSD charge, did not establish guilt beyond a reasonable doubt. The evidence presented by the prosecution failed to show possession by the petitioner; furthermore, if possession had been established, the evidence was inadequate to prove the petitioner's intent to distribute.

Before reviewing the facts in support of its conclusion, the Court must first note that it is uncomfortable with its role in applying the *Jackson v. Virginia* standard. *Jackson* requires a federal habeas judge to determine whether "*any* rational trier of fact" could have found guilt beyond a reasonable doubt. Before a challenge to the sufficiency of the evidence can be reviewed under federal habeas corpus the claim must have been considered previously by as many as a dozen judges, sometimes including the justices of the Supreme Court of the United States, upon direct or collateral review. *See Hobson v. Murray*, 485 F.Supp. 1340, 1347 n.12 (E.D.Va.1980). One must be bold to assay their rationality. Justice would be better served by focusing attention on the proof of the elements of the offense charged rather than by questioning the rationality of the trial and the reviewing

judges. Nevertheless, the *Jackson* inquiry must be made.

## II.

On 4 February 1977, Chesterfield County police officers raided an apartment occupied by the petitioner, his wife and his child. The raid was undertaken in accordance with the valid "no knock" warrant. When the officers entered the apartment, they found the petitioner, his wife, and five or six guests on the ground floor, where a party was in progress. Three children were located upstairs.

The officer in charge of the raid, Sergeant Williams, testified at trial that after he came through the front door of the apartment, he encountered the petitioner in a hallway leading from the living room to the front door. (Tr. p. 10).[1] The petitioner's wife shortly thereafter came down from the second floor. All of the guests at the party were in the living room. (Tr. p. 11). There was no evidence that the petitioner or any other person in the house was using drugs at the time of the raid.

Sergeant Williams testified that, after confronting the petitioner, he presented the petitioner with the search warrant. He then remained with the petitioner while other officers searched the apartment for drugs. (Tr. p. 11). In the course of a search of the second floor, an investigating officer, Officer Proffitt, uncovered a plastic bag containing 39 grams of marijuana, stored in a cabinet under the bathroom sink. Empty plastic bags were also found in the cabinet. (Tr. pp. 32–34).

In a dresser drawer in the master bedroom, Officer Proffitt found another plastic bag which contained 12 grams of marijuana. A pistol and a large sum of money were found in another drawer of the dresser. (Tr. pp. 34–36). The money was returned to the petitioner after trial when the Commonwealth's Attorney acknowledged that he had been unable to link the money with the sale of drugs. (Sentencing Tr. p. 7).

Officer Proffitt reported to Sergeant Williams that drugs had been discovered on the premises. Sergeant Williams then took the petitioner into the kitchen, which was on the first floor at the front of the house. (Tr. pp. 10, 13). Sergeant Williams advised the petitioner of his *Miranda* rights while other officers continued searching the first floor. An envelope found behind a garbage can in the kitchen contained 31 tablets of LSD. (Tr. p. 37). Also in the kitchen, officers found five plastic bags containing a total of 22 grams of marijuana. These bags were located on top of a cabinet along with a set of kitchen scales. The officers found empty plastic bags inside the cabinet. (Tr. pp. 39–40).

In sum total, the investigating officers recovered 73 grams, or 2.555 ounces, of marijuana from three separate locations in the apartment. The cache in the bathroom contained the largest single quantity of marijuana—39 grams, or 1.365 ounces.

A stakeout of the premises during the week preceding the raid showed that some fifty or more persons had visited the apartment for short periods of time—no more than five minutes each.

## III.

The petitioner in this case was convicted of two counts charging a violation of Section 18.2–248 of the Virginia Code. That section provides in pertinent part:

Except as authorized in the Drug Control Act, chapter 15.1 (§ 54–524.1 et seq.) of Title 54 of this Code, it shall be unlawful for any person to manufacture, sell, give, distribute or possess with intent to manufacture, sell, give or distribute a controlled substance.

As the Virginia Supreme Court recognized in *Stillwell v. Commonwealth*, 219 Va. 214, 219, 247 S.E.2d 360, 363 (1978), Section 18.-2–248 is intended to curtail the sale of illicit drugs as a commercial enterprise. Simple possession of a controlled substance is proscribed under a separate provision, Section 18.2–250.

---

1. Except where otherwise indicated, reference is made to the trial transcript.

Possession of a controlled substance is an element of the offense under both Section 18.2–248 and Section 18.2–250. Reasonably, simple possession ought to be a lesser included offense of possession with intent to distribute. In *Russell v. United States*, 507 F.2d 1029, 1030 (4th Cir. 1974), the Fourth Circuit Court found under the Virginia statute in effect at the time that simple possession was in fact a lesser included offense. Since *Russell*, however, the Virginia statutes defining drug offenses have been revised, and the relation between Section 18.-2–248 and Section 18.2–250 is not entirely clear.

Section 18.2–250 contains the following provision dealing specifically with proof of possession:

> Upon the prosecution of a person for a violation *of this section*, ownership or occupancy of premises or vehicle upon or in which a controlled substance was found shall not create a presumption that such person either knowingly or intentionally possessed such controlled substance. [Emphasis added.]

The petitioner was prosecuted for a violation of Section 18.2–248, so by the literal language of Section 18.2–250, he could be subject to a presumption of possession based upon his occupancy of the apartment. This result, however, would be indefensible because the presumption barred by statute upon prosecution of a lesser offense could be relied upon when prosecuting for the greater offense.

The Court believes that under the Virginia statutes, Section 18.2–248 possession must be coextensive with Section 18.2–250 possession. That has been the assumption of counsel for the petitioner and the Commonwealth throughout this litigation. As a matter of due process of law, it is an assumption which must govern in this case. In evaluating the sufficiency of the proof of possession, therefore, the Court will refer to cases decided under both sections of the Virginia Code.

■ Under Virginia law, to sustain a conviction for possession of a controlled drug, "it is generally necessary to show that the accused was aware of the presence and character of the particular controlled substance and that he consciously and intentionally possessed it." *Womack v. Commonwealth*, 220 Va. 5, 255 S.E.2d 351, 352 (1979). Constructive possession of a controlled drug may be shown by establishing that the drug was subject to the accused's dominion or control. *Gillis v. Commonwealth*, 215 Va. 298, 302, 208 S.E.2d 768, 771 (1974); *Ritter v. Commonwealth*, 210 Va. 732, 741, 173 S.E.2d 799, 805–806 (1970).

■ As the Virginia Supreme Court held in *Ritter v. Commonwealth*, possession may be proved by "evidence of acts, declarations or conduct of the accused from which the inference may be fairly drawn that he knew of the existence of narcotics at the place where they were found." 210 Va. at 741, 173 S.E.2d at 806; *see also*, *Andrews v. Commonwealth*, 216 Va. 179, 182, 217 S.E.2d 812, 814 (1975). Mere proximity to a controlled substance, however, is insufficient to establish possession. *Wright v. Commonwealth*, 217 Va. 669, 670, 232 S.E.2d 733, 734 (1977). Furthermore, no presumption of possession arises from the ownership or occupancy of the premises where drugs are found. *Gillis v. Commonwealth*, 215 Va. at 301, 208 S.E.2d at 770–771; Va. Code § 18.2–250.

To support the convictions in this case, the Commonwealth was also required to prove the petitioner's intent to distribute the drugs which were seized. "Intent necessarily must be proved by circumstances." *Hunter v. Commonwealth*, 213 Va. 569, 570, 193 S.E.2d 779, 780 (1973).

In several cases, the Virginia Supreme Court has discussed circumstances which indicate an intent to distribute. In *Hunter v. Commonwealth*, the Supreme Court held that the "quantity [of drugs found in the defendant's possession] when greater than the supply ordinarily possessed by a narcotics user for his personal use, may be sufficient to support a finding of intent to distribute." *Id.*

■ Also relevant to an evaluation of intent is the manner in which the drugs

were packaged when seized. *Colbert v. Commonwealth*, 219 Va. 1, 4, 244 S.E.2d 748, 749 (1978). The finder of fact may consider evidence that the drugs were "packaged in distributable form." *Hunter v. Commonwealth*, 213 Va. at 570, 193 S.E.2d at 780.

■ The finder of fact may consider, further, whether the defendant personally used the drugs which he possessed. *Colbert v. Commonwealth*, 219 Va. at 4, 244 S.E.2d at 749. If it is shown that the defendant was in exclusive possession, it may also be considered whether any persons accompanying the defendant when the seizure occurred were at that time using drugs of the type seized. *Hunter v. Commonwealth*, 213 Va. at 570, 193 S.E.2d at 780; *Adkins v. Commonwealth*, 217 Va. 437, 440, 229 S.E.2d 869, 871 (1976). The finder of fact may also rely upon facts, including possession of currency, from which an inference may reasonably be drawn that the defendant had consummated a sale of drugs. *Colbert v. Commonwealth*, 219 Va. at 4, 244 S.E.2d at 749.

■ The circumstances outlined above ought not be viewed as exhaustive. *Adkins v. Commonwealth*, 217 Va. at 440, 229 S.E.2d at 871. However, it is firmly established under Virginia law that the existence of intent cannot be based upon speculation or surmise. *Id.; Patterson v. Commonwealth*, 215 Va. 698, 699, 213 S.E.2d 752, 753 (1975). Thus, assuming proof of possession by the defendant, it was necessary for the Commonwealth to introduce sufficient evidence showing the drugs seized were intended for distribution and were not for the defendant's personal use. *Dutton v. Commonwealth*, 220 Va. 762, 263 S.E.2d 52, 54–55 (1980).

### IV.

The Court finds the evidence insufficient for any rational trier of fact to believe beyond a reasonable doubt that the petitioner was in actual or constructive possession of the drugs seized in the 4 February 1977 raid. That the petitioner was not in actual possession of drugs is clear from the record since the petitioner submitted to a search of his person when he was arrested. No drugs were found. (Tr. pp. 25–26).

There was also no showing that any of the drugs seized were under the petitioner's dominion or control. No presumption of possession can be drawn from the petitioner's occupancy of the apartment. *Gillis v. Commonwealth, supra.* An examination of the evidence fails to disclose any other circumstance, other than occupancy, tending to prove possession by the petitioner.

■ The trial judge made no findings as to the separate stashes of marijuana, so the Court must review the evidence as to each. First, 39 grams of marijuana were found in a cabinet beneath the bathroom sink. There was no evidence that any of the petitioner's belongings were located in the cabinet along with the marijuana. The only other contents of the cabinet, according to the testimony, were some empty plastic bags. (Tr. pp. 32–34).

The bathroom in question was situated between the main bedroom and a small bedroom which the petitioner and his wife testified had been regularly used by two adult visitors. (Tr. 59–60, 73, 80). All of the occupants of the house and all of the guests present at the time of the raid and at any time before the raid had equal access to the bathroom. Possession of that marijuana cannot, therefore, be laid at the petitioner's feet in the absence of some indicia of personal control. *Womack v. Commonwealth, supra; Gillis v. Commonwealth, supra.* No such showing was made at trial. It is true that one has "possession" of his own bathroom, but the ready access thereto by others, including notably defendant's spouse, forecloses a rational finding of dominion or control by defendant.

The police officers conducting the search also found a plastic bag containing a small quantity of marijuana in a vanity drawer in the main bedroom. The petitioner's wife testified that the marijuana belonged to her and that she kept it in the drawer with her underwear. (Tr. p. 61). The latter aspect of this testimony was corroborated by the investigating officer. (Tr. p. 45).

■ Again, mere proximity to a controlled substance is insufficient to establish possession as a matter of State law. *Wright v. Commonwealth, supra.* The evidence at trial was insufficient to show that the petitioner was aware of or had exercised any conscious dominion over the contraband located in the shared bedroom. There is thus no support for the trial judge's finding of possession in this regard.[2]

Finally, when the police officers searched the kitchen they found on top of a kitchen cabinet five plastic bags containing a total of 22 grams of marijuana. Also on top of the cabinet was a set of kitchen scales. The prosecution did not produce any evidence that marijuana or other drug residue was found on the scales. The petitioner's wife testified that the scales were stored on top of the cabinet because there was no room on the counter. (Tr. p. 68). Several plastic bags, a common kitchen item, were also found inside the cabinet, but the prosecution was unable to attribute any special significance to this discovery.

■ As with the other caches, there is no evidence that the petitioner stored the marijuana in the kitchen, used marijuana obtained from that storage place, or even knew of its location. It was not shown to be in plain view of defendant. The marijuana found in the kitchen was accessible to any person in the apartment. The petitioner's occupancy does not create a presumption of possession. *Gillis v. Commonwealth, supra.*

The proof of the petitioner's possession of LSD is similarly defective. The prosecution established only that 31 tablets of LSD were found in an envelope behind a garbage can in the kitchen. There was no evidence that the petitioner, by his statements or conduct during the search, indicated his awareness of the existence of the LSD at the place where it was found. It was not in plain view. The evidence is merely that LSD was found in his kitchen

on the night of a party at his premises. *Cf. Ritter v. Commonwealth, supra.*

The prosecution at trial and the respondent in the State habeas action have argued at length that the petitioner had an opportunity to throw the packet of LSD into the kitchen when he heard the police at the door. The prosecution theory was that the petitioner tossed the packet from a position at the kitchen door. This theory, however, is entirely speculative and is disproved by the relevant evidence, to the extent such evidence exists.

At trial, Sergeant Williams testified that he was the first officer to come through the door of the apartment. Sergeant Williams stated further that the petitioner was in the hall leading from the living room as he entered the front door:

... Mr. Bentley was coming down the hallway. As I went in the door, Mr. Bentley and I met face to face.

(Tr. p. 10). This testimony was reinforced by Sergeant Williams during cross-examination:

[THE WITNESS]:

.... Mr. Bentley met me approximately halfway down the hall, about right along the door to the kitchen.

Q. All right, sir, and he was coming towards the door when you broke it in?

A. Yes, sir.

(Tr. p. 19).

Accepting, as it must, Sergeant Williams' testimony as true, the Court can only conclude that the petitioner and Sergeant Williams converged from opposite ends of the hallway and met approximately at the kitchen door. Sergeant Williams, who entered with his gun drawn (Tr. p. 21), must surely have been alert to any movement on the petitioner's part, but he did not report that the petitioner made any suspicious motions.

Moreover, even accepting that the petitioner had the *opportunity* to throw the

---

**2.** It is appropriate to note at this point that the evidence of possession is equally indicative of the guilt of the wife as the guilt of the petitioner. The possibility exists, of course, that both were guilty. However, there is no evidence proving the petitioner's possession beyond a reasonable doubt.

LSD into the kitchen before he was spotted by Sergeant Williams, there is absolutely no evidence from which an inference can be drawn that he in fact did so. From the testimony offered at trial, it cannot be determined when the LSD came to rest behind the garbage can. No fingerprint evidence was introduced to establish that the defendant had ever handled the envelope.

■ There is no basis for inferring possession of LSD by the petitioner, except for his occupancy of the premises and his proximity to the kitchen at the time Sergeant Williams entered the apartment. Proximity to one's kitchen has so many innocent bases that it is unreasonable to infer that in this particular instance defendant threw the envelope behind the garbage can. Under Virginia law, possession cannot be inferred from these circumstances alone. *Gillis v. Commonwealth, supra; Wright v. Commonwealth, supra.*

The Court finds that the evidence introduced to prove possession was insufficient, under the standard set in *Jackson v. Virginia, supra,* to support either conviction under review. Upon this finding, a writ of habeas corpus shall issue. However, cognizant of the fact that the Court's finding is subject to appellate review, and in the interest of judicial economy, the Court will also consider the evidence introduced to prove intent to distribute, the second element of the offenses of which the petitioner stands convicted.

### V.

Assuming only for the purposes of this analysis that the petitioner was properly found to have possessed the drugs seized in his apartment, the evidence was insufficient to establish his intent to distribute those drugs. With reference first to the LSD, there was no showing by the prosecution (1) that the amount of LSD possessed was incompatible with the hypothesis that the petitioner had it for his own use; (2) that the party guests had recently used LSD; or (3) that any other person seen coming out of the petitioner's apartment was found in possession of LSD. *See Adkins v. Commonwealth,* 217 Va. at 440, 229 S.E.2d at 871.

At trial, Sergeant Williams testified that he had staked out the petitioner's house for one week before the raid. During this period of surveillance, the petitioner was visited by a number of people who, Sergeant Williams testified, stayed in the petitioner's apartment for no more than 5 minutes. (Tr. pp. 83–84). However, none of the persons visiting the petitioner was stopped by the police upon leaving. The following exchange took place when Sergeant Williams was cross-examined on this testimony:

Q. Did you arrest any of these people [who visited the petitioner?]

A. No, sir.

Q. You don't know what they went in there for, do you?

A. No sir. Well, I have my ideas on it.

Q. I mean of your own knowledge, do you know?

A. No sir.

(Tr. p. 84).

A finding of intent to distribute cannot be based on speculation or surmise. *Adkins v. Commonwealth,* 217 Va. at 440, 229 S.E.2d at 871. The traffic through the petitioner's apartment may be cause for suspicion, but it does not establish actual distribution or intent to distribute as to either the LSD or the marijuana.

The Court discerns no additional circumstances which support the conviction for possession with intent to distribute LSD. The evidence will now be considered as to the marijuana conviction.

■ Police officers seized a total of 2.55 ounces of marijuana from three separate locations in the petitioner's apartment. The Commonwealth introduced no evidence that such a quantity was "greater than the supply ordinarily possessed by a narcotics user for his personal use." *Hunter v. Commonwealth,* 213 Va. at 570, 193 S.E.2d at 780. In *Adkins v. Commonwealth,* the Virginia Supreme Court determined that possession of 178 grams, an amount far in excess of the 73 grams seized in this case, had not been proven to be inconsistent with possession for personal use. 217 Va. at 440,

229 S.E.2d at 871. Therefore, in *Adkins*, no inference of intent could be drawn from the amount of marijuana possessed. The amount of marijuana seized in the petitioner's apartment similarly cannot be considered as circumstantial evidence of an intent to distribute.

The prosecution also did not undertake to prove that the marijuana was in distributable form. The marijuana found in the bedroom and bathroom, contained in single plastic bags at each location, was packaged and stored in a manner not inconsistent with possession for personal use. Empty plastic bags were found in the bathroom cabinet; however, the evidence does not indicate that marijuana residue was found in the empty bags. A large sum of money was seized from the bedroom vanity; the prosecution acknowledged, though, that it could not connect the currency with the sale of drugs. There are thus no indicia of distribution for the drugs found in the bedroom and bathroom.

Five separate bags containing a total of 22 grams were found on top of a kitchen cabinet. The evidence does not disclose in what proportions the marijuana was divided between the five bags. There was also no evidence introduced to show that the amount contained in any of the bags was sufficient to be considered a "distributable" amount in the normal course of drug transactions. If the marijuana was evenly distributed between the five bags, each bag would have contained approximately 0.15 ounce of the substance. Although prosecution witnesses referred to the set of kitchen scales found beside the bags of marijuana, as has been mentioned previously, the prosecution did not submit evidence that marijuana residue was found on the scales.[3]

■ After considering all of the evidence presented at trial, the Court concludes that there was insufficient evidence that the petitioner intended to distribute marijuana. The same conclusion must be drawn with respect to the LSD charge, as has been seen.

Because the evidence introduced at trial fails to support a finding of guilt beyond a reasonable doubt, the Court holds that the convictions for possession with intent to distribute marijuana and possession with intent to distribute LSD cannot stand. The Court will therefore GRANT the petition for writ of habeas corpus.[4]

■ In this case, the petitioner has challenged the sufficiency of the evidence used to convict him, and the Court has upheld his challenge. Given the nature of the claim, the Commonwealth cannot be permitted the option to retry the petitioner, for a retrial would be in violation of the Double Jeopardy Clause. *Burks v. United States*, 437 U.S. 1, 17–18, 98 S.Ct. 2141, 2150–2151, 57 L.Ed.2d 1 (1978); *Greene v. Massey*, 437 U.S. 19, 24, 98 S.Ct. 2151, 2154, 57 L.Ed.2d 15 (1978).

Accordingly, within 10 days of this order, the petitioner shall be RELEASED from confinement to the extent that such confinement is based on the judgment which has now been declared invalid. References to the convictions in any official records available to the Commonwealth shall be MODIFIED to reflect that the convictions were found in this action to have been based on insufficient evidence.

And it is so ORDERED.

---

3. At trial and in the State habeas proceeding the Commonwealth argued the significance of finding the packets of marijuana and the kitchen scales in proximity to one another. Yet the total amount of marijuana found, 22 grams, amounts to no more than three-quarters of an ounce and when evenly divided between the plastic bags each would contain, as noted in the text, 0.15 ounces. Kitchen scales would be useless in making such fine divisions. The presence of the scales, then, is insignificant.

4. Law officers need feel no frustration that this decision imposes an impossible burden of proof where they have cause to believe that households occupied by more than one person are being used as marketing points for drugs. If it be true, as in this case, that police have observed 50 or more people visiting an apartment, giving rise to a reasonable suspicion of drug trafficking, it would seem an elementary matter of police procedure for an undercover agent to make a "buy." There would then be no doubt as to the identity of the dealer or dealers.