COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present: Judges Huff, Athey and Causey
Argued at Alexandria, Virginia


SHAWN MAURICE JAMES

MEMORANDUM OPINION[*] BY
v.      Record No. 1736-22-2      JUDGE DORIS HENDERSON CAUSEY
JANUARY 23, 2024

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF FREDERICKSBURG
Gordon F. Willis, Judge

(Alexander Raymond, on brief), for appellant. Appellant
submitting on brief.

Ken J. Baldassari, Assistant Attorney General (Jason S. Miyares,
Attorney General, on brief), for appellee.


Shawn Maurice James ("James") appeals his conviction, following a jury trial, for

possession of a firearm after conviction of a violent felony, in violation of Code § 18.2-308.2.[1]

Conceding that he was a convicted felon and that the recovered handgun is a firearm as

contemplated by Code § 18.2-308.2, James contends that the evidence failed to prove that he

knowingly and intentionally possessed a firearm. For the following reasons, we disagree and affirm

the conviction.

---

[*] This opinion is not designated for publication. *See* Code § 17.1-413(A).

[1] James was also charged with felony failure to appear, but the jury acquitted him of that
charge.

BACKGROUND[2]

On June 2, 2021, Fredericksburg Police Officer Finbarr Murphy was conducting surveillance of a Quality Inn in Fredericksburg, Virginia. Officer Murphy observed a black Impala arrive at the Quality Inn; the vehicle's occupants exited the vehicle and entered one of the Quality Inn rooms. Immediately thereafter, the occupants returned to the vehicle and left the area. Believing that the occupants of the car may have engaged in criminal activity, Officer Murphy followed the vehicle as it left the Quality Inn onto I-95. While traveling northbound on I-95, Officer Murphy paced the Impala and determined that it was traveling 75 miles per hour in a 65 mile-per-hour zone. Consequently, Officer Murphy activated his emergency equipment and initiated a traffic stop.

Once the Impala came to a stop, Officer Murphy approached the vehicle's passenger side and informed the driver, Alyssa Young, of the reason for the stop. Officer Murphy then identified the rest of the vehicle's occupants as Timothy Johnson, in the front passenger seat; James, in the rear passenger seat behind Young; and Amber Green, in the rear passenger seat behind Johnson. After gathering the occupants' information, Officer Murphy returned to his patrol vehicle to prepare a written warning for Young. Officer Gillworth had arrived on the scene to maintain visual contact with the vehicle and its occupants.

Through a computer database, Officer Murphy learned that some of the occupants of the Impala had a narcotics history. Based on his observations before the stop and the occupants' demeanor during the stop, Officer Murphy requested a canine to conduct an open-air sniff of the

---

[2] On appeal, "we review the evidence in the 'light most favorable' to the Commonwealth." *Clanton v. Commonwealth*, 53 Va. App. 561, 564 (2009) (en banc) (quoting *Commonwealth v. Hudson*, 265 Va. 505, 514 (2003)). That principle requires us to "discard the evidence of the accused in conflict with that of the Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences that may be drawn therefrom." *Kelly v. Commonwealth*, 41 Va. App. 250, 254 (2003) (en banc) (quoting *Watkins v. Commonwealth*, 26 Va. App. 335, 348 (1998)).

vehicle. Upon the canine's arrival, Officer Gillworth removed each occupant from the vehicle one at a time. While Officer Gillworth removed the occupants, Officer Murphy continued to do paperwork in the driver's seat of his patrol car, which was situated directly behind the Impala. Suddenly, Officer Murphy observed Officer Gillworth draw his service weapon and extract James from the vehicle.

While Officer Gillworth detained James, Officer Murphy approached the vehicle and located a SCCY 9mm handgun in plain view "propped up against a 12 pack of beer" in the rear passenger footwell; the gun was facing the seat that James had just vacated. Officer Murphy noted that the firearm was "propped, quite literally, right between where [James's] two front feet would have been." Officer Murphy removed the firearm from the vehicle. While securing the firearm, Officer Murphy discovered that the chamber was empty, but the firearm contained a magazine. Later, Officer Gillworth advised Officer Murphy that he had observed the handgun on the rear driver-side floorboard located directly where James had been seated.

Officer Murphy then questioned the vehicle's occupants about the firearm. Young, Johnson, and Green denied ownership of the firearm and asserted that they did not know it was in the vehicle. James also denied ownership of the firearm, but advised Officer Murphy that his fingerprints may be on the firearm. James explained that he had discovered the firearm underneath the rear passenger seat and, upon realizing that it was a gun, "dropped it." While describing his discovery of the firearm to Officer Murphy, James made a motion consistent with reaching between his legs. Officer Murphy took this motion to mean that James found the firearm in the space underneath the rear driver-side passenger seat. James further admitted that the beer against which the firearm was propped was his.

Officer Murphy investigated James's claim that the firearm had been stored under the rear passenger bench seat. Officer Murphy discovered that there was a storage area underneath the rear

- 3 -

passenger seats, however, it was inaccessible to passengers while they sat on the seat. To access the storage compartment, the entire bench seat had to be lifted, which would require an individual in the back seat either to exit the vehicle or to stand within the vehicle.

Subsequently, James was transported to the police station. While awaiting an appearance before the magistrate, James stated, "When I got out the car, I knew the officer was going to see [the firearm]." Officer Murphy noted that James then changed his story from locating the firearm under the vehicle's rear passenger seat to locating the "handgun underneath the driver seat of the vehicle."

The firearm was submitted for laboratory analysis, but no recognizable fingerprints were found on the firearm or the gun's magazine. The Commonwealth introduced James's prior conviction confirming his status as a convicted felon at the time of the traffic stop. James then testified in his own defense regarding his failure to appear charge. After closing argument, the jury convicted James of possessing a firearm after conviction of a felony. The trial court sentenced him to five years of incarceration. James appeals.

ANALYSIS

James asserts that the evidence was insufficient to support his conviction, arguing that the Commonwealth failed to prove that he possessed a firearm. "When reviewing the sufficiency of the evidence, '[t]he judgment of the trial court is presumed correct and will not be disturbed unless it is plainly wrong or without evidence to support it.'" *McGowan v. Commonwealth*, 72 Va. App. 513, 521 (2020) (alteration in original) (quoting *Smith v. Commonwealth*, 296 Va. 450, 460 (2018)). "In such cases, '[t]he Court does not ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt.'" *Id.* (alteration in original) (quoting *Secret v. Commonwealth*, 296 Va. 204, 228 (2018)). "Rather, the relevant question is whether '*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Vasquez v. Commonwealth*, 291 Va. 232, 248 (2016) (quoting *Williams v.*

- 4 -

*Commonwealth*, 278 Va. 190, 193 (2009)). "If there is evidentiary support for the conviction, 'the reviewing court is not permitted to substitute its own judgment, even if its opinion might differ from the conclusions reached by the finder of fact at the trial.'" *McGowan*, 72 Va. App. at 521 (quoting *Chavez v. Commonwealth*, 69 Va. App. 149, 161 (2018)).

James contends that he did not intentionally possess the recovered firearm. He claims that while he was a passenger in the vehicle, he found an item underneath the seat. Upon discovering that the item was a firearm, he "dropped it." James appears to assert that this act dispossessed him of the firearm. James admits he was aware of the presence and character of the firearm and possessed it, but his possession was "fleeting" and therefore not intentional. Finally, he asserts that the firearm could have belonged to one of the vehicle's other occupants, but because they, too, were felons, it was in their best interest to deny bringing the firearm into the vehicle.

"The sole responsibility to determine the credibility of witnesses, the weight to be given to their testimony, and the inferences to be drawn from proven facts lies with the fact finder." *Blankenship v. Commonwealth*, 71 Va. App. 608, 619 (2020) (quoting *Ragland v. Commonwealth*, 67 Va. App. 519, 529-30 (2017)). Moreover, "[t]he conclusions of the fact finder on issues of witness credibility may be disturbed on appeal only when we find that the witness' testimony was 'inherently incredible, or so contrary to human experience as to render it unworthy of belief.'" *Ashby v. Commonwealth*, 33 Va. App. 540, 548 (2000) (quoting *Fisher v. Commonwealth*, 228 Va. 296, 299 (1984)). "In all other cases, we must defer to the conclusions of 'the fact finder[,] who has the opportunity of seeing and hearing the witnesses.'" *Id.* (alteration in original) (quoting *Schneider v. Commonwealth*, 230 Va. 379, 382 (1985)).

"[M]erely because [a] defendant's theory of the case differs from that taken by the Commonwealth does not mean that every reasonable hypothesis consistent with his innocence has not been excluded. What weight should be given evidence is a matter for the [factfinder] to

decide." *Edwards v. Commonwealth*, 68 Va. App. 284, 301 (2017) (second and third alterations in original) (quoting *Haskins v. Commonwealth*, 44 Va. App. 1, 9 (2004)). "By finding [a] defendant guilty, therefore, the factfinder 'has found by a process of elimination that the evidence does not contain a reasonable theory of innocence.'" *Id.* (alteration in original) (quoting *Haskins*, 44 Va. App. at 9). "While a factfinder may not arbitrarily disregard a reasonable doubt, whether 'the hypothesis of innocence is reasonable is itself a "question of fact," subject to deferential appellate review.'" *Burton v. Commonwealth*, 58 Va. App. 274, 285-86 (2011) (quoting *Clanton v. Commonwealth*, 53 Va. App. 561, 572 (2009) (en banc)).

"It shall be unlawful for (i) any person who has been convicted of a felony . . . to knowingly and intentionally possess or transport any firearm." Code § 18.2-308.2(A). Possession can be proven "by showing either actual or constructive possession." *Birdsong v. Commonwealth*, 37 Va. App. 603, 607 (2002) (quoting *Barlow v. Commonwealth*, 26 Va. App. 421, 429 (1998)).

Actual possession is defined as the "physical occupancy or control over property." *Lucas v. Commonwealth*, 75 Va. App. 334, 346 (2022) (quoting *Brown v. Commonwealth*, 37 Va. App. 507, 521 (2002)). To establish constructive possession, "the Commonwealth must point to evidence of acts, statements, or conduct of the accused or other facts or circumstances which tend to show that the defendant was aware of both the presence and character of the [firearm] and that it was subject to his dominion and control." *Terlecki v. Commonwealth*, 65 Va. App. 13, 24 (2015) (quoting *Drew v. Commonwealth*, 230 Va. 471, 473 (1986)). Proximity to the firearm "is a circumstance probative of possession and may be considered as a factor in determining whether the defendant possessed the firearm." *Bolden v. Commonwealth*, 275 Va. 144, 148 (2008). "[T]he issue of constructive possession 'is largely a factual one and must be established by evidence of the acts, declarations and conduct of the accused.'" *Smallwood v.*

- 6 -

*Commonwealth*, 278 Va. 625, 631 (2009) (quoting *Ritter v. Commonwealth*, 210 Va. 732, 743 (1970)).

In *Smallwood*, Smallwood was driving a vehicle with a front seat passenger. *Id.* at 627. In the early morning hours, the police stopped Smallwood for a "road check." *Id.* After the deputies smelled a strong odor of alcohol coming from the vehicle, the officers directed Smallwood to move his car to the side of the road for further investigation. *Id.* A deputy approached and observed a .38 caliber revolver in plain view on the center console beside Smallwood's leg. *Id.* at 628. Smallwood, a convicted felon, explained that the gun was his passenger's, that he never touched it, and that he thought having the firearm in the vehicle was lawful if the gun's owner was in the car. *Id.*

The Virginia Supreme Court found that Smallwood's own statements established that he was aware of the presence and character of the firearm. *Id.* at 631. Further, the vehicle was small and the firearm rested on an open console "right beside [Smallwood's] right leg." *Id.* (alteration in original). The Supreme Court concluded that Smallwood had unrestricted access to the firearm and, "[i]n an instant, [he] could have had actual, exclusive possession of the firearm[.]" *Id.*

Here, James's statements establish that he had actually possessed the firearm. James first told Officer Murphy that he discovered the firearm under the rear passenger seat and, upon discovering it was a gun, dropped it. While at the police station, James then asserted that he found the firearm under the driver's seat. Under either version, James admitted that he exercised actual control over the firearm when he picked it up. Although James claims that his possession of the gun was fleeting, and therefore unintentional, "the duration of possession [of a firearm] is immaterial." *Grier v. Commonwealth*, 35 Va. App. 560, 570 (2001) (quoting *Gillis v.*

*Commonwealth*, 215 Va. 298, 302 (1974)). Thus, a reasonable factfinder could conclude beyond a reasonable doubt that James actually possessed the gun recovered from the car.

Moreover, James's statements also establish that he was aware of the character and nature of the firearm and had unrestricted access to it. At the police station James stated, "When [he] got out the car, [he] knew . . . [O]fficer [Gillworth] was going to see [the firearm]." The firearm was recovered in the well of the rear passenger seat propped up against James's case of beer. James's feet had been astride the beer and the firearm mere moments before he exited the car. Officer Murphy noted that the firearm was facing James and not the driver's seat. Thus, as in *Smallwood*, in an instant, James could have had actual, exclusive possession of the firearm. Upon this evidence, a reasonable finder of fact could conclude beyond a reasonable doubt that James also constructively possessed the firearm and that he was guilty of possessing a firearm after being convicted of a felony.

## CONCLUSION

We hold that the evidence was sufficient to sustain James's conviction of possession of a firearm by a convicted felon.

*Affirmed*.