## Richmond

### JAMES RUSSELL GILLIS v. COMMONWEALTH OF VIRGINIA.

October 14, 1974.

Record No. 740165.

Present, I'Anson, C.J., Carrico, Harrison, Cochran, Harman and Poff, JJ.

*Barry W. Norwood (Norwood & Norwood,* on brief), for plaintiff in error.

*Gilbert W. Haith, Assistant Attorney General (Andrew P. Miller, Attorney General,* on brief), for defendant in error.

Harman, J., delivered the opinion of the court.

James Russell Gillis, the defendant, waived a jury trial and was convicted by the trial court of possession of marijuana as proscribed by Code § 54-524.101:2. His punishment was fixed at a fine of $250 and a jail sentence of 12 months, with the jail sentence suspended.

We must determine whether the evidence is sufficient to support that conviction. Upon appeal, we must view the evidence, and all reasonable inferences therefrom, in the light most favorable to the party who prevailed in the court below, that party, in this instance, being the Commonwealth.

The warrant upon which the defendant was convicted was issued after the search of an apartment in the Fan District of Richmond on June 20, 1973, by two members of the Richmond Police Department. Defendant has never challenged the validity

of the search warrant or the manner in which the search was conducted.

The apartment, rented jointly by defendant and Gary Cook (Cook), had been under intermittent police surveillance for drug activity for approximately two weeks prior to the search. Detectives John J. Cox (Cox) and George C. Robinson (Robinson) arrived at the apartment at approximately 10:50 p.m. on June 20 to execute a search warrant which had been issued earlier that night. Cox approached the front door and Robinson went to the rear of the apartment. While waiting for Cox to knock and announce his presence, Robinson observed the interior through double glass doors at the rear of the apartment. He saw the defendant in the kitchen adjacent to the rear of the apartment and observed Cook sitting on a sofa in the living-dining area near the front door.

After Cox knocked, Cook opened the front door. Cox identified himself as a police officer and advised Cook that he was there to execute the search warrant. As he entered the apartment, Cox observed the defendant walking toward him from the kitchen. In the living-dining area Cox saw and seized some "burnt plant material" which appeared to be marijuana. This material was in an ash tray beside a chair.

The officers also seized a large pipe containing "burnt material" which was sitting in open view on the living room table. The main structure of the pipe, described as a "hash pipe" by one of the Commonwealth's witnesses, is composed of a bent Plexiglas tube, 13 inches long and 1-1/2 inches in diameter, mounted upright upon a six by five inch rectangular wooden base. The overall height of the pipe is 14-1/2 inches. A small wooden bowl with a wooden shank is mounted into one wall on the lower half of the large tube with the shank extending to and connecting with a Plexiglas coupling which passes through the opposite wall of the large tube. A small Plexiglas tube extends downward from the bottom of the bowl of the pipe inside the large tube to within 1/2 inch of the bottom of that tube. A bent glass tube, 6-1/2 inches long and 1/4 inch in diameter, fits into the coupling and thereby connects it with the wooden shank. Two screw top metal cannisters, 1-1/4 inches in diameter and 1-3/4 inches high, are mounted on the base below and on either side of the bowl.

A plastic bag in one of the metal cannisters contained a small amount of marijuana. Laboratory tests of the material seized from the ash tray and scrapings from the wooden bowl of the pipe confirmed them to be marijuana.

The evidence shows that the defendant and Cook jointly rented and occupied the apartment, and that only they had keys to the apartment. While Cook and the defendant occupied separate bedrooms, they jointly shared the living-dining area and the kitchen of the apartment.

The defendant argues that the evidence in the case at bar is insufficient to prove the elements which the Commonwealth must establish to convict him of possession of a controlled substance. In support of this argument he points to testimony presented on his behalf at trial.

Defendant testified that the marijuana did not belong to him. He further testified that the pipe was the property of his cotenant, Cook, who had purchased it several months before from a man whose name was unknown to defendant.

Gillis' testimony showed that he had been staying at the home of a friend for about one week prior to his arrest and had only been at the apartment on two occasions, i.e., for a "brief" time on June 18 and after 10:00 p.m. on the night of June 20. Upon cross-examination, Gillis revealed, without objection, that he was already on probation for another conviction of possessing marijuana. The defendant acknowledged that the pipe was in open view on the living room table.

Testimony of two other defense witnesses tended to corroborate that Gillis, during the week prior to his arrest, had been at the apartment on only one other occasion. One of these witnesses testified that he, the witness, was present and observed Cook purchase the pipe from an unknown man in January or February.

As we noted earlier, upon appellate review, we must view the evidence, and all reasonable inferences therefrom, in the light most favorable to the Commonwealth, who prevailed below.

Here the trial court, sitting without a jury, heard and observed the witnesses who testified. In those circumstances, the credibility of such witnesses and the weight to be given to their testimony are matters peculiarly within the province of the trial

judge and his findings are entitled to the weight of a jury verdict.

The defendant points to Code § 54-524.101:2 which provides, in pertinent part:

"It is unlawful for any person knowingly or intentionally to possess a controlled substance unless the substance was obtained directly from, or pursuant to, a valid prescription or order of a practitioner while acting in the course of his professional practice, or except as otherwise authorized by this chapter.

"Upon the prosecution of a person for a violation of this section, ownership or occupancy of premises or vehicle upon or in which a controlled substance was found shall not create a presumption that such persons either knowingly or intentionally possessed such controlled substance."

Gillis says that the evidence fails to show anything more than that he and Cook jointly occupied the premises where the marijuana was found. Since no presumption arises from his occupancy of the apartment, he argues the Commonwealth has failed to carry its burden of proving his guilt beyond a reasonable doubt.

While no presumption arises from the ownership or occupancy of premises where marijuana is found, it is a circumstance which may be considered by the court, along with the other evidence, in determining the defendant's guilt or innocence.

Here the evidence discloses more than occupancy of the premises. It shows that defendant knew that a "hash pipe," commonly used for smoking marijuana, was sitting on the living room table in an area which he and Cook jointly shared. Evidence of defendant's previous conviction of possession of marijuana establishes his familiarity with it. The defendant's own evidence shows that he had been at the apartment for almost an hour prior to the raid. He was present when the officers entered.

To establish possession of a controlled substance, it generally is necessary to show that the defendant was aware of the presence and character of the particular substance and was intentionally and consciously in possession of it. Physical possession giving the defendant "immediate and exclusive"

control is sufficient. However, the possession need not always be exclusive. The defendant may share it with one or more. The duration of the possession is immaterial and need not always be shown to have been actual possession. The defendant may be shown to have constructive possession by establishing that the controlled substance involved was subject to his dominion or control. *Ritter* v. *Commonwealth*, 210 Va. 732, 741, 173 S.E.2d 799, 805-06 (1970).

In the circumstances disclosed by the evidence, the trial court was justified in inferring that the defendant had dominion and control of the marijuana and was, therefore, in constructive possession of it.

*Affirmed.*