## Richmond

## John Joseph Abdo, a/k/a Hanna Yousef Khalil Abdo v. Commonwealth of Virginia

October 7, 1977.

Record No. 770050.

Present: All the Justices.

474

*John Kenneth Zwirling* for plaintiff in error.

*Jerry P. Slonaker, Assistant Attorney General (Anthony P. Troy, Attorney General,* on brief), for defendant in error.

HARRISON, J., delivered the opinion of the Court.

John Joseph Abdo was convicted by a jury on December 4, 1975, of manufacturing phencyclidine, a controlled substance. His punishment was fixed at 12 years confinement in the penitentiary, a sentence within the limits prescribed by Code § 54-524.101:1(a). Final judgment of conviction was entered by the trial court on January 8, 1976, and defendant noted an appeal. Section 54-524.101:1(a) had been repealed and reenacted as Code § 18.2-248, effective October 1, 1975, but the penalty provision of the statute had been unaffected. However, during the time Abdo's petition for a writ of error was pending, the General Assembly amended and reenacted § 18.2-248. The 1976 enactment, which became effective on July 1, 1976, provides that a violator with respect to a Schedule III controlled substance (which at that time included phencyclidine) shall be guilty of a Class 1 misdemeanor and punished by confinement in jail for not exceeding 12 months and a fine not exceeding $1,000, either or both.[1]

The issue is whether under the circumstances related the trial court was required to reduce the defendant's sentence to conform with the lesser penalty, Abdo's motion for reduction of

---

[1]The 1977 General Assembly reclassified phencyclidine as a Schedule II controlled substance. Code § 54-524.84:6(e)(5). Va. Acts of Assembly 1977, ch. 302, at p. 371.

sentence having been filed after July, 1976, and prior to completion of appellate review.

Defendant's petition for a writ of error was denied and the judgment below was affirmed by our order entered September 29, 1976. On August 3, 1976, while his petition for a writ was pending, Abdo moved the trial court to exercise its jurisdiction, pursuant to Code § 53-272, and to reduce defendant's sentence to one appropriate for a Class 1 misdemeanor. Defendant was then incarcerated in the Arlington County jail and the trial court ordered that he not be transferred to the penitentiary so that the court would not lose jurisdiction to hear and to consider his motion. On October 1, 1976, the court denied defendant's motion for reduction of sentence (declined to change the sentence it had imposed), and remanded defendant to jail.[2]

Thereafter, on October 20, 1976, upon defendant's motion to suspend a portion of his sentence, the court ordered that four years of the original 12-year sentence be suspended and that defendant be given credit for the time already served. This order remanded defendant to jail to await transportation to the penitentiary. Defendant's assignment of error challenges the refusal of the trial court to conform "petitioner's sentence to the law in force at the time of petitioner's motion to reduce sentence".

Defendant argues that Virginia is a common law state, citing Code § 1-10, and says that:

> "At common law, the repeal of a criminal statute abated all prosecutions which had not reached final disposition in the highest court authorized to review them. [Citations omitted.] Abatement by repeal included a statute's repeal and re-enactment with different penalties. [Authority omitted.] And the rule applied even when the penalty was reduced. * * * " *Bradley* v. *United States*, 410 U.S. 605, 608 (1973).

*See also Bell* v. *State of Maryland*, 378 U.S. 226 (1964).

Abdo further contends that although the general effect of Code § 1-16 is to preclude retroactive application of new statutes, the statute must be strictly construed against the

---

[2] While it does not appear from the record, apparently the trial court was unaware at the time it acted on October 1, 1976, that this Court had refused, on September 29, 1976, Abdo's petition for writ of error.

Commonwealth and in his favor because it is in derogation of the common law. The section provides that:

> **"Repeal not to affect liabilities; mitigation of punishment. —** No new law shall be construed to repeal a former law, as to any offense committed against the former law, or as to any act done, any penalty, forfeiture, or punishment incurred, or any right accrued, or claim arising under the former law, or in any way whatever to affect any such offense or act so committed or done, or any penalty, forfeiture, or punishment so incurred, or any right accrued, or claim arising before the new law takes effect; *save only that the proceedings thereafter had shall conform, so far as practicable, to the laws in force at the time of such proceedings;* and if any penalty, forfeiture, or punishment be mitigated by any provision of the new law, such provision may, with the consent of the party affected, be applied to any judgment pronounced after the new law takes effect. * * * "
> [Italics supplied.]

Abdo's position is that the italicized portion of Code § 1-16 *must* be given effect in subsequent proceedings when practicable. He says that his motion for reduction of sentence was timely made because he had not been transferred to the penitentiary, and his motion was a "proceeding" within the contemplation of Code § 1-16. Defendant sees no "practical" reason why he should not have been accorded the benefit of the statutory change and his punishment reduced to accord with that provided for a misdemeanor.

Alternatively, he argues that beyond dispute the trial judge had the discretionary power under Code § 53-272 to alter the sentence fixed by the jury. He says that the General Assembly, by lowering the punishment for the offense he committed, unequivocally expressed its judgment that the lesser penalty was sufficient to meet the legitimate ends of the criminal law, and that nothing is to be gained by inflicting on him the more severe penalty. He concludes that under these circumstances the failure of the trial court to grant his motion amounted to an abuse of discretion.

The Attorney General's position is that the language contained in Code § 1-16, which we have italicized, relates only to changes in procedure being utilized so far as practicable, and

has no application to mitigation of penalty or punishment. He says that the matter of penalty or punishment is addressed specifically in the last paragraph of Code § 1-16, which provides: "[I]f any penalty, forfeiture or punishment be mitigated by any provision of the new law, such provision *may*, with consent of the party affected, be applied to any *judgment pronounced* after the new law takes effect." [Emphasis added.] In support, our attention is directed to the West Virginia statute which is virtually the same as Code § 1-16, and to *Carlton v. Herndon,* 81 W. Va. 219, 94 S.E. 131 (1917), where the court said:

> "But for * * * [the statute] saving the right of the state to proceed against persons guilty of offenses committed under laws repealed after the commission thereof, the application for discharge on the writ of *habeas corpus* awarded the prisoner would no doubt be well founded. *It declares the repeal or expiration of the law shall not affect the offense committed, nor the penalty or punishment imposed therefor, beyond variation of the procedure.* The saving clause is not an exception of any offense, penalty, or punishment from the operation of the act. None of them are to be affected by the repeal or expiration. They all survive. But there is an exception or variation as to the procedure. In other words, *the repeal or expiration affects nothing but the procedure, and, as to that, the act provides that*
>
> " 'The proceedings thereafter had shall conform, as far as practicable, to the laws in force at the time such proceedings take place.'
>
>     * * *
>
> "The penal part of the statute is clear. It maintains and keeps alive the old offense and penalty. Only the procedure is altered or made over, and it is not altered, except in those instances in which the new method is practicable. * * *" 81 W. Va. at 220-21, 94 S.E. at 131-32. [Emphasis added.]

To the same effect, *see People v. Hansen,* 28 Ill. 2d 322, 192 N.E.2d 359 (1963), *cert. denied,* 376 U.S. 910 (1964), and *Jones v. Commonwealth,* 104 Ky. 468, 47 S.W. 328 (1898), construing statutes of Illinois and Kentucky similar to Code § 1-16.

The Commonwealth contends that "the judgment pronounced" referred to in Code § 1-16 was the judgment the

trial court pronounced and entered on January 8, 1976, at which time Abdo was formally sentenced to the penitentiary. We agree. No further judgment was granted. Abdo's petition for a writ of error was to that final judgment which he claimed was entered in error. This Court reviews final judgments only, and the judgment we reviewed in the instant case, and which we found to be "plainly right", was the January 8th final judgment.

In *Conaway* v. *Commonwealth*, 118 Va. 792, 88 S.E. 75 (1916), the defendant was indicted for the murder of her husband on January 24, 1914, at which time murder in the first degree was punishable by death only. Effective June, 1914, punishment for first degree murder was mitigated to "death, or in the discretion of the jury by confinement in the penitentiary for life". We held that under Section 6 of the Virginia Code of 1887, now Code § 1-16, the punishment prescribed by the statute in effect at the time of the offense must be applied, unless the accused consents to trial and judgment under the new law. The election of the Commonwealth to prosecute under the new law, and the privilege of an accused to consent to be tried thereunder, must be exercised before judgment is pronounced.

■ There is authority that the word "proceedings" includes each and every step from the issue of a criminal complaint to the conclusion of the case, and that the word is broad enough to cover any act, measure, step or all steps in a course taken in conducting litigation, civil or criminal. *Sigmon* v. *Commonwealth*, 200 Va. 258, 105 S.E.2d 171 (1958). Defendant argued that Code § 1-16 mandated the trial court to mitigate his punishment in accordance with the provisions of the new law. The statute does not so provide. Further, the language of the statute is that the court *may* apply the provisions of the new law, and the provision to be applied must be applied to a "judgment pronounced after the new law takes effect". No such judgment was ever pronounced in this case after the January 8, 1976 judgment. Moreover, the authority of the court to act under Code § 53-272 is a discretionary authority. As Code § 53-272 existed before the effective date of the 1976 amendment thereto, the trial court had no power after twenty-one days from final judgment to "modify or alter" the unserved portion of a sentence. It was the same General Assembly that reduced the penalty for manufacturing phencyclidine to a misdemeanor that also amended Code § 53-272 to give a trial court the

discretionary authority at any time before a prisoner is committed to the penitentiary to suspend or otherwise modify and alter the unserved portion of any sentence imposed upon an accused.

In defendant's motion to reduce sentence, he asked the court to exercise its jurisdiction pursuant to Code § 53-272, as amended, and to reduce defendant's sentence from 12 years to one appropriate for a Class 1 misdemeanor, as provided by Code § 18.2-248, as amended. While the trial court first declined to change the sentence it had imposed on January 8, 1976, it thereafter did mitigate defendant's sentence by suspending four years thereof. It is our conclusion that in both instances the trial court acted within its discretion. Final judgment having been pronounced before the effective date of the new law, the court could only act under Code § 53-272, and this because Abdo had never been transferred to the penitentiary, not because of any authority granted the court by Code § 1-16.

We cannot say as a matter of law that the trial judge abused his discretion in the instant case. At the time Abdo committed the offense for which he was tried, and at the time of his trial, the maximum punishment provided was 40 years in the penitentiary. A jury, having heard the evidence, concluded that a 12-year sentence in the penitentiary was indicated, and the trial judge concurred. We have held in numerous cases that when a statute prescribes a maximum imprisonment penalty and the sentence does not exceed that maximum, the sentence will not be overturned as being an abuse of discretion. *Perry* v. *Commonwealth*, 208 Va. 283, 156 S.E.2d 566 (1967).

When the General Assembly reduced the penalty for the offense of manufacturing phencyclidine it did not enact accompanying legislation extending the benefit of the mitigating effect of the statute beyond that provided for in Code § 1-16. We see no constitutional question involved in this case. The fact that the legislature reduces the penalty for a crime after a prisoner is sentenced, and he does not benefit from that mitigation of punishment, does not constitute an arbitrary classification or deny the prisoner equal protection of the law. Here the legislature, in the exercise of its reasonable legislative determination, has seen fit to draw the line of demarcation at the point where final judgment is pronounced and entered. It

cannot be said that to draw it at this point is more arbitrary than at some other stage in the criminal process. *Bradley* v. *United States*, 410 U.S. 605 (1973).

*Affirmed.*