## Richmond

### SUSAN WHITTON ECKHART

### V.

### COMMONWEALTH OF VIRGINIA

September 11, 1981.

Record No. 801373.

Present: All the Justices.

*Robert G. Cabell, Jr.,* for appellant.

*Joan W. Murphy, Assistant Attorney General (Marshall Coleman, Attorney General,* on brief), for appellee.

COCHRAN, J., delivered the opinion of the Court.

Richard Alan Eckhart and Susan Whitton Eckhart, his wife, were tried jointly by the court, sitting without a jury, on indictments charging each with possession with intent to distribute more than one-half ounce and less than five pounds of marijuana. Each was found guilty as charged. Richard was sentenced to serve ten years in prison, with four years suspended; imposition of sentence on Susan was suspended for 20 years, and she was placed on probation. On Richard's appeal, in which the sole issue was the admissibility of certain allegedly hearsay evidence, we affirmed his conviction. *Eckhart* v. *Commonwealth,* 222 Va. 213, 279 S.E.2d 155 (1981). The sole issue on Susan's appeal is the sufficiency of the evidence against her.

On November 13, 1979, about 10:14 p.m., police officers executed a search warrant in Henrico County at 7002 Tulane Avenue, a residence in which an informant had reported that a man named "Snake" lived. When Richard Eckhart identified himself

as "Snake" and acknowledged that he lived there, a copy of the search warrant was served upon him. In the living room when the officers entered the dwelling were eight persons, including Richard, all of whom were detained there while the search was conducted.

As Trooper L. O. Gwaltney, III of the Virginia State Police, proceeded to search the premises, he discovered Susan Eckhart, with a baby in her lap, sitting on a stool between the doorways of the two bedrooms that were located at the end of a hallway. Standing in the hallway, Gwaltney observed a baby crib containing baby "pampers" and clothing in the bedroom "directly" at the end of the hallway. On a newspaper on the floor next to the crib, he saw a box marked "Scales," several pieces of tin foil, a large roll of aluminium wrap, a knife, and a razor blade, all of which could be seen from the living room by an observer standing at the hallway. From the hall, Gwaltney also saw three wooden pipes in plain view in the living room.

Making a thorough search of the bedroom containing the crib, Gwaltney found and seized various metal foil packages of plant material, 15 packages in one plastic bag, nine packages in another, three in another, and two other plastic bags containing similar material. He seized a set of scales, the knife and the razor blade. In the same room, under a table in a paper bag covered by blue jeans and shirts, Gwaltney found and seized six metal foil packages of plant material in the form of solid blocks. Each block was approximately six inches long by four inches wide by one to two inches high. Gwaltney testified that when he stood where Susan had been sitting in the hall, if he faced the bedrooms he could see into them, and that in the bedroom with the baby crib he could have seen all the articles that he seized except the large paper bag that was covered by clothes.

Chemical analysis revealed that the plant material seized during the search of this bedroom comprised 2,232 grams, approximately 4.9 pounds, of marijuana. The officers found no marijuana in the other bedroom, which appeared to Gwaltney to be the one used by the occupants of the house.

Gwaltney testified that he found on the premises a blank check with the names and address of Richard A. Eckhart and Susan W. Eckhart, 7002 Tulane Avenue, printed thereon, and a copy of a telephone bill, dated October 20, 1979, for services charged to "S.

Whitton" at the same address. Susan informed the officer that her name was Whitton before she married Richard.

Neither Susan nor Richard admitted ownership of the marijuana and none was found on either of them. There was evidence that Betty Jean Tucker, one of the group detained in the living room during the search, told the officers that the marijuana was hers but, upon further questioning, retracted the statement.

After the Commonwealth's evidence had been completed, Susan's motion to strike the evidence was overruled. Susan offered no evidence.

■ Susan's conviction is based upon evidence of her constructive possession of marijuana. The applicable law is summarized in *Womack* v. *Commonwealth*, 220 Va. 5, 255 S.E.2d 351 (1979). Constructive possession may be shown by establishing that the marijuana was known to and subject to the dominion and control of the accused. Knowledge of the presence and character of the controlled substance may be shown by evidence of the acts, statements or conduct of the accused. Mere proximity to the controlled substance, however, is insufficient to establish possession. *Id.* at 7, 255 S.E.2d at 352. Nevertheless, the possession need not be exclusive. *Ritter* v. *Commonwealth*, 210 Va. 732, 741, 173 S.E.2d 799, 805-06 (1970).

Susan contends that the evidence is insufficient to show that she had knowledge of the existence of the marijuana or any dominion or control over it. She says that her proximity to the marijuana was all that was established. She stresses the lack of evidence to show that a light was on in the bedroom where the marijuana was found or that there was sufficient light from other areas to reveal to her, as she sat in the hall, the controlled substance and related paraphernalia. She argues that the evidence shows that the baby was on her lap and fails to show any suspicious acts or furtive gestures on her part, fails to show how long the marijuana had been in the room, and fails to establish how far from that room she was sitting when the officers conducted the search.

■ We do not agree with Susan's assessment of the evidence. The circumstantial evidence indicated that she and Richard were cotenants of the residence. The court could reasonably infer, as Susan's counsel conceded in oral argument before us, that the baby Susan held was hers. Accordingly, the court could reasonably conclude that the room containing the crib and "pampers" was used, at least in part, by or for the baby.

Although there was in evidence no measurement of the distance from Susan's stool to the bedroom where the marijuana was seized, Trooper Gwaltney testified that he saw the incriminating objects, which he described, on the floor of the bedroom as he stood in the hallway, and that an observer standing where Susan sat could have seen these objects. The inference is compelling that either the light was on in the bedroom or the room was illuminated by light from other sources.

There is no presumption of knowing or intentional possession of the marijuana from Susan's occupancy of the residence. Code § 18.2-250.1. Her occupancy of the premises as a cotenant, however, is a factor to be considered with other evidence in determining whether she had constructive possession. *Gillis* v. *Commonwealth,* 215 Va. 298, 301, 208 S.E.2d 768, 770-71 (1974). Here, Susan, age 21, who had attended college for two years, was sitting outside the open door to a room in which substantial quantities of packaged marijuana and related paraphernalia were visible. The trial court could reasonably conclude that she was aware of the contents of the room and had stationed herself where she could exercise dominion and control over the marijuana.

■ The quantity of the controlled substance, the manner in which it was packaged, and the presence of paraphernalia used in the packaging process were sufficient to show an intent to distribute. *See Dutton* v. *Commonwealth,* 220 Va. 762, 764-65, 263 S.E.2d 52, 54 (1980); *Colbert* v. *Commonwealth,* 219 Va. 1, 4, 244 S.E.2d 748, 749 (1978); *Hunter* v. *Commonwealth,* 213 Va. 569, 570, 193 S.E.2d 779, 780 (1973). Therefore, we hold that the evidence was sufficient to support Susan's conviction for possessing marijuana with the intent to distribute it, and we will affirm the judgment of the trial court.

*Affirmed.*

STEPHENSON, J., dissenting.

It is my opinion that the evidence, when viewed in the light most favorable to the Commonwealth, is insufficient to prove the defendant guilty beyond a reasonable doubt. Where, as here, a conviction is based on circumstantial evidence:

to establish guilt beyond a reasonable doubt all necessary circumstances proved must be consistent with guilt and incon-

sistent with innocence. They must overcome the presumption of innocence and exclude all reasonable conclusions inconsistent with that of guilt. To accomplish that, the chain of necessary circumstances must be unbroken and the evidence as a whole must satisfy the guarded judgment that both the corpus delicti and the criminal agency of the accused have been proved to the exclusion of any other rational hypothesis and to a moral certainty . . . .

*LaPrade* v. *Commonwealth,* 191 Va. 410, 418, 61 S.E.2d 313, 316 (1950).

The majority says "[t]he trial court could reasonably conclude that she was aware of the contents of the room and had stationed herself where she could exercise dominion and control over the marijuana." I cannot agree with this characterization of the evidence. Trooper Gwaltney could not state whether Mrs. Eckhart was in the hall when the police arrived. Further, he testified that the scales and other accessories, not the drugs themselves, were in plain view. Finally, when asked whether either of the bedrooms was being used by the occupants, Gwaltney stated that he did not know if anyone was staying in the room where the drugs were found and that the other bedroom was the one "that was being used by the occupants of the house."

Even using the majority's characterization of the evidence, it cannot support a conviction. I have no disagreement with the majority's statements that constructive possession "may be shown by establishing that the marijuana was known to and subject to the dominion and control of the accused," and that "[k]nowledge of the presence and character of the controlled substance may be shown by evidence of the acts, statements or conduct of the accused." However, it has pointed to no acts, statements or conduct of the accused that would lead to the conclusion that she had knowledge of the presence of the drugs.

Mere proximity to controlled drugs is insufficient to establish possession. *Womack* v. *Commonwealth,* 220 Va. 5, 7, 255 S.E.2d 351, 352 (1979). Nor does ownership or occupancy of premises in which controlled drugs are found "create a presumption that such person either knowingly or intentionally possessed" them, Code § 18.2-250, although this is a factor that may be considered with other evidence in determining whether one had constructive pos-

session. *Gillis* v. *Commonwealth,* 215 Va. 298, 301, 208 S.E.2d 768, 770-71 (1974).

We have held the evidence to be insufficient for conviction in other cases where the accused had knowledge of the drug's presence or exercised dominion and control over the premises. Thus, in *Clodfelter* v. *Commonwealth,* 218 Va. 619, 238 S.E.2d 820 (1977), drugs were found in the hotel room rented to the defendant, he had the only key to the room, there was evidence that he occupied it, and when first questioned by the police, he gave a false name. This court stated that while the evidence created a strong suspicion of guilt, it fell short of proving possession beyond a reasonable doubt. *Id.* at 623, 238 S.E.2d at 822.

In *Huvar* v. *Commonwealth,* 212 Va. 667, 187 S.E.2d 177 (1972), the defendant was arrested in the bathroom of an apartment, drugs were scattered in plain view in other rooms, the apartment smelled of marijuana and the defendant appeared to have been using drugs. We held that the defendant did not have constructive possession of the drugs found in the apartment.

In *Wright* v. *Commonwealth,* 217 Va. 669, 232 S.E.2d 733 (1977), the defendant, a former drug user, was found in the bedroom of an apartment. Also present was Jimmy Ray Carter, who dropped a syringe as police entered. Heroin was found at Carter's feet and under a dresser three feet from Wright. Holding that mere proximity was not enough and refusing to engage in "speculation and conjecture," *Id.* at 670, 232 S.E.2d at 734, we reversed Wright's conviction.

Mrs. Eckhart had no more dominion and control over the bedroom than Clodfelter did over his hotel room. She was no closer to the drugs nor had more reason to know of them than Huvar or Wright. Moreover, she did not engage in deceptive conduct, as did Clodfelter, nor did she have the knowledge of drugs that Wright, a former user, had.

The conviction in this case is based on speculation and conjecture. The circumstantial evidence, at most, creates a suspicion of guilt. Since the Commonwealth failed to prove its case beyond a reasonable doubt and the defendant's guilt has not "been proved to the exclusion of any other rational hypothesis and to a moral certainty," I would reverse the conviction.

POFF and THOMPSON, JJ., join in dissent.