**Richmond**

KATHY MARIE LANE

V.

COMMONWEALTH OF VIRGINIA

June 18, 1982.

Record No. 810861.

Present: All the Justices.

714

*Randolph D. Eley, Jr.; Gary C. Hancock (Gilmer, Sadler, Ingram, Sutherland & Hutton,* on brief), for appellant.

*Thomas D. Bagwell, Assistant Attorney General (Gerald L. Baliles, Attorney General,* on brief), for appellee.

STEPHENSON, J., delivered the opinion of the Court.

Tried by a jury, Kathy Marie Lane was convicted of possession of methaqualone with intent to distribute. Her punishment was fixed at 20 years in the penitentiary and a fine of $10,000. On appeal, Lane argues the evidence is insufficient as a matter of law to support the jury's verdict; that the trial court erred in admitting certain evidence; and that the trial court abused its discretion in failing to suspend or reduce Lane's sentence.

Lane owned and occupied a dwelling in the Town of Pulaski. On November 10, 1979, a number of police officers searched the house. Lane, her 19-month-old child, Ronald Boardwine (the father of the child), and a teenage girl were present. The search warrant was directed to and was served on Boardwine, who was the object of the officers' suspicions.

The defendant sat in a chair in the living room while the search was conducted. She did and said nothing until an officer approached the chair. The officer testified that, at that point, she became "fidgetive" and exclaimed that "there was nothing behind the chair."

Contrary to Lane's assertion, the officer discovered behind the chair a white plastic bag containing nine other bags, each of which contained approximately 1,000 methaqualone pills. The estimated "street value" of the pills was $72,000.

Confronted with this evidence, Lane denied any knowledge of the drugs and stated she had not stayed at her house during the two preceding weeks because it had been occupied by a couple from Florida. The officers, who had the house under periodic surveillance for two weeks, admitted they had never seen Lane. Testifying at trial, Lane denied ownership of the drugs and knowledge of their presence. Boardwine also testified Lane was not aware of the drugs.

Constructive possession may be shown by establishing that the methaqualone was known to Lane and subject to her dominion and control. *Susan Eckhart v. Commonwealth,* 222 Va. 447, 450, 281 S.E.2d 853, 855 (1981); *Womack v. Commonwealth,* 220 Va. 5, 7, 255 S.E.2d 351, 352 (1979). "Knowledge of the presence and character of the controlled substance may be shown by evidence of the acts, statements or conduct of the accused." *Eckhart,* 222 Va. at 450, 281 S.E.2d at 855. While mere proximity to contraband is insufficient to establish possession, *id.,* and an accused's occupancy of the premises does not give rise to a presumption of possession, Code § 18.2-250.1, these factors are circumstances to be considered by the jury with other evidence in determining whether a defendant constructively possessed drugs. *Gillis v. Commonwealth,* 215 Va. 298, 301, 208 S.E.2d 768, 770-71 (1974).

In the present case, Lane owned and occupied the premises. The large and valuable quantity of methaqualone was hidden directly behind the chair in which she was seated. She said and did nothing as the police officer searched in and around other furnishings in the living room, but, when he began to search in the area of the chair she occupied, she became nervous and volunteered the statement that there was nothing behind the chair. Clearly, these are the kinds of acts, statements, and conduct which tend to prove her knowledge of the presence and character of the contraband.

Considering the evidence and all its reasonable inferences in the light most favorable to the Commonwealth, we cannot say it is insufficient as a matter of law to sustain the jury's verdict.

We now direct our attention to the evidentiary issues. While Lane has assigned error to a number of the trial court's rulings, we consider only those to which proper objection was made at trial. Rule 5:21.

■ Richard J. McGarry, a toxicologist, testified regarding the six schedules of controlled drugs and the general nature and characteristics of each schedule. Thereafter, in response to the Commonwealth's question, "Can it [methaqualone] be dangerous to the human body?", McGarry replied: "Methaqualone was placed in the Schedule II category because it can be a dangerous drug when taken in overdose amounts; in toxicology throughout the country quite a number of deaths from methaqualone have occurred from the drug." When asked, "what is the normal effect of methaqualone?", McGarry said:

> The normal effect is as a sedative; it was originally introduced as a sleeping pill and it is, although it has the same effect as the older ones which were the barbiturates or like Nembutal or Seconal, it chemically is not in that category, it does have the same effect in that the onset of action is quick, a person will go to sleep relatively quickly after taking it within 30 minutes to an hour and its effect will last for about 6 to 8 hours.

Admitting this testimony into evidence was error. *L. H. Smith v. Commonwealth,* 223 Va. 720, 292 S.E.2d 362 (1982). In *Smith,* an expert witness was permitted to state his opinion regarding the effect of lysergic acid diethylamide (LSD) on the human body. He testified that LSD has "made people go as far as to tear their eyes right out of their sockets, chew off an arm, jump out of windows, do some really . . . bizarre things." *Id.* at 722, 292 S.E.2d at 363. We held that since this testimony was irrelevant to the issue of whether Smith sold LSD, it was inadmissible. Furthermore, we concluded the testimony "only served to inflame and excite the passions of the jury." *Id.*

The Commonwealth argues that if McGarry's testimony was inadmissible, it was harmless error. We agree. Unlike the testimony we considered in *Smith,* McGarry's was not such as would

excite the passions of the jury. While he testified that excessive use of the drug is dangerous, he was careful to state its normal effect is that produced by a sleeping pill. We view this testimony as being innocuous, and while it was erroneously admitted, it does not justify a reversal of Lane's conviction.

■ Lane also objects to the testimony of a second expert called by the Commonwealth. Richard Lee, a chemist, testified the pills in question were "clandestinely" made and could have been manufactured in a number of places, either inside or outside the country. Lane argues this testimony was beyond Lee's field of expertise. We do not agree. The qualification of an expert is within the sound discretion of the trial court. *Freeman* v. *Commonwealth,* 223 Va. 301, 315, 288 S.E.2d 461, 469 (1982). Lee had performed over 1,200 drug analyses, approximately 150 of them involving methaqualone. His conclusion the pills were clandestinely made followed directly from his analysis, based on the chemical makeup of the pills and the markings on them.

■ Another of Lane's assignments of error relates to the testimony of a police officer that a large quantity of packaged pocketknives, T-shirts, and other items was found in the house. Lane argues this evidence was irrelevant and prejudicial.

The Commonwealth argues its questioning of the officer was in response to issues raised by Lane's counsel and that, if the admission of the testimony was error, it was invited by Lane. The transcript supports this contention. Lane's attorney questioned the officer regarding the search of the house as follows:

Q. [You] [l]eft no stone unturned, correct?
A. I try not to.
Q. All right, did you find anything?
A. I found a lot of things but no contraband.
Q. Not anything suspicious?
A. No contraband.

On re-direct examination of the witness by the Commonwealth's Attorney, the following occurred:

Q. All right, . . . you mentioned in response to a defense question there when they asked if you found anything suspicious, you replied you found no contraband; did you find anything else suspicious in the house?
A. To me it appeared to be suspicious, yes, sir.

Q. All right, and what were these items?

A. I found a large quantity of pocketknives, hundreds of T-shirts still in their container, things of that nature, large quantities of different items, saleable items that does [sic] not usually appear in a residence or a home.

We agree with the Commonwealth that any error regarding this testimony was invited by Lane. *Clark* v. *Commonwealth*, 202 Va. 787, 791, 120 S.E.2d 270, 273 (1961); *Hundley* v. *Commonwealth*, 193 Va. 449, 454, 69 S.E.2d 336, 339 (1952).

■ In a final evidentiary matter, Lane objects to the admission into evidence of the affidavit for the search warrant. The basis for Lane's objection at trial was that the warrant and affidavit were not available for inspection prior to trial as required by Code § 19.2-54.* She argues that under this Code section an affidavit not properly filed is inadmissible at trial. The section, however, deals with the admissibility of evidence seized in the search and is silent on the introduction of the affidavit at trial. We find no merit in the argument that Code § 19.2-54 precluded the introduction of the affidavit.

■ Finally, Lane contends the trial court erred in not suspending or reducing her sentence. These are matters resting within the sound discretion of the trial court, and we cannot say from the record before us that this discretion was abused. *Abdo* v. *Commonwealth*, 218 Va. 473, 479, 237 S.E.2d 900, 903 (1977); *Slayton* v. *Commonwealth*, 185 Va. 357, 365, 38 S.E.2d 479, 482-83 (1946).

---

* Code § 19.2-54 states in pertinent part:

Such affidavit shall be certified by the officer who issues such warrant and delivered by such officer . . . to the clerk of the circuit court . . . within seven days after the issuance of such warrant and shall by such clerk be preserved as a record and shall at all times be subject to inspection by the public. Each such clerk shall maintain an index of all such affidavits filed in his office in order to facilitate inspection . . . .

Failure of the officer issuing such warrant to file the required affidavit shall not invalidate any search made under the warrant unless such failure shall continue for a period of thirty days. If the affidavit is filed prior to the expiration of the thirty-day period, nevertheless, evidence obtained in any such search shall not be admissible until a reasonable time after the filing of the required affidavit.

On appeal, Lane also argues the affidavit should not have been admitted as substantive evidence. However, this argument was not made at trial, and Lane is therefore precluded from raising it on appeal. Rule 5:21.

Finding no reversible error, we will affirm the judgment.

*Affirmed.*

RUSSELL, J., concurring.

I agree that the judgment should be affirmed. However, I find no error in the trial court's admission of the toxicologist's testimony concerning the effect of the drug on the body, for the reasons stated in the dissent in *L. H. Smith v. Commonwealth,* 223 Va. 720, 292 S.E.2d 362 (1982), decided today.

THOMPSON, J., joins in concurring opinion.