COURT OF APPEALS OF VIRGINIA

Present: Chief Judge Decker, Judges O'Brien and Causey
Argued at Lexington, Virginia

DERRICK LASHAWN WRIGHT

v.        Record No. 0879-23-3

COMMONWEALTH OF VIRGINIA

MEMORANDUM OPINION[*] BY
JUDGE DORIS HENDERSON CAUSEY
NOVEMBER 19, 2024

FROM THE CIRCUIT COURT OF HENRY COUNTY
James R. McGarry, Judge

Kelsey Bulger, Senior Appellate Attorney (Virginia Indigent Defense
Commission, on briefs), for appellant.

Sheri H. Kelly, Assistant Attorney General (Jason S. Miyares,
Attorney General; Ken J. Baldassari, Assistant Attorney General, on
brief), for appellee.


Derrick LaShawn Wright was convicted by a jury of possession with intent to distribute:

cocaine, second offense; fentanyl, second offense; more than ten grams of methamphetamine;

more than one-half ounce but less than five pounds of marijuana; and possession of more than

one pound of marijuana and/or a Schedule II controlled substance while in possession of a

firearm.[1] The trial court imposed a term of incarceration of 55 years, with 39 years suspended.

On appeal, Wright challenges the sufficiency of the evidence to establish constructive possession

of the drugs or firearms. Additionally, he asserts that the Commonwealth did not prove his intent

to distribute on the marijuana and firearm charges. Finding that the evidence was sufficient to

create factual issues for the jury to resolve, we affirm.

---

[*] This opinion is not designated for publication. *See* Code § 17.1-413(A).

[1] The trial court granted Wright's motion to reduce a similar possession of alprazolam
with intent to distribute to simple possession. The jury acquitted him on that charge.

BACKGROUND

On July 18, 2019, Henry County Investigator Darrell Foley and other members of an arrest team went to a county residence to serve an arrest warrant on Wright. After they parked in the driveway of the residence, Foley got out and started to walk toward the kitchen door in the carport. Wright came out from the kitchen door and approached Foley. Foley arrested Wright and walked him to the edge of the carport. Foley detected "a strong smell of marijuana" on Wright. Foley searched Wright, who had $2,630 in his pants pocket.

Another officer then directed Foley to the rear of the residence. As he walked past the kitchen door Foley "got a strong smell of marijuana coming from the doorway." When Foley came to a railing at the rear of the home, he saw what appeared to be marijuana plants growing in several containers. Foley then walked back toward Wright, who was standing with two other officers off the porch, and again detected "a strong smell of marijuana coming from the residence." Foley also saw an open bag on the kitchen table.

Foley told Wright that the officers were going to obtain a search warrant and look through the house to ensure that no one else was present. Wright responded that "he would go inside and get the marijuana" and told Foley that he "didn't need a search warrant." Nevertheless, the officers conducted a safety sweep of the house and found no one else. They also secured the premises while they waited for the arrival of a search warrant for the residence. Wright was standing outside a patrol car about to be taken to the magistrate's office on the arrest warrant when he asked to speak with Foley. Wright informed him that a safe in the house contained "about fifteen thousand" and "about six thousand of it [was] his girl's." Wright said, "I'm done and I'm going away for a long time."

Police then executed a search warrant for the house. Foley saw digital scales and a Glock handgun in the open bag on the kitchen table. The handgun contained ammunition within the

magazine.  After removing the other items from the bag, Foley also recovered a medication bottle in the bag containing 11 and a half pills.  The bag also held a plastic bag "containing a chunky substance."

Foley also saw a glass jar and a cellphone on the kitchen table.  A Virginia Criminal Justice Agency form with Wright's picture and name on it along with other personal information was also on the table.  Further, Foley seized a cellphone on the kitchen countertop and a backpack hanging on the kitchen chair.  A search of the backpack revealed a Walmart bag containing a Ziploc bag that in turn contained two plastic bags.  The bags variously contained an "off white substance," pills, and "green powder."  During the search of the kitchen the officers also came upon an EBT card bearing the name "Bianca V. Hairston."

The backpack also contained a set of digital scales and "an aftermarket piece you can put on a handgun to make it automatic instead of every time you pull the trigger.  When you pull the trigger, . . . it shoots constantly."  More than 200 rounds of ammunition and another set of scales were in various kitchen cabinets.

Next, the officers searched the living room, hallway closets, and bathroom but found nothing of note.  Likewise, the first two bedrooms along the hallway did not contain any potentially incriminating items.  In the third bedroom's closet, however, an open safe contained "two large bags of green plantlike material," ammunition, and $15,060.  A closed black bag next to the safe contained a Glock handgun with an extended magazine and ammunition within the magazine.  Further examination of the bag disclosed a Diamondback AR style pistol.  Inside a box were an AR style rifle, four magazines, and 118 rounds of rifle ammunition.  Three pairs of men's shoes were found on the floor next to the closet, which contained men's clothing.  On the other side of the room from the safe was another woman's bra, women's shoes, and several lotions and similar items.  After searching the bedrooms, the officers went to the basement.  There, they came upon a monitor

that was a live feed to a camera facing in the direction of the marijuana plants behind the house. The basement door led to the rear of the residence where the plants were growing. The officers also found two handgun cases, a magazine and ammunition, and camouflaged body armor hanging on a chair. When the officers removed the cushions from a couch in the basement, they discovered an AK style 7.62 rifle and a magazine containing ten rounds.

Neil Vowels, a state forensic scientist, testified as an expert on chemistry and drug analysis. Vowels determined that Commonwealth's Exhibit 4, the "plastic bag containing a chunky substance," contained 7.3667 grams of cocaine. Vowels found that the off-white substance in the Ziploc bag contained 308.49 grams of cocaine hydrochloride, and the smaller "green substance" in the Ziploc bag contained 25.155 grams of fentanyl. The "knotted plastic bag . . . contain[ing] green powder" was analyzed as 1.9758 grams of methamphetamine, and five of the 128 tablets were also found to contain methamphetamine. Finally, Vowels determined that the two plastic bags with plant-like material contained 650.77 grams, or a little over one pound, of marijuana and the plant material in the glass jar contained an additional 41.16 grams of marijuana.

Henry County Sheriff's Lieutenant Timothy Brummitt, qualified as an expert on illegal drug distribution, opined that the amount of fentanyl was "inconsistent with personal use" considering that personal use cases typically involve less than one gram. Brummitt testified that the recovery of such items as the digital scales, large amount of money, firearms, body armor, and cellphones buttressed this conclusion. Brummitt stated that the amounts of marijuana and cocaine recovered were also inconsistent with personal use for the same reasons. Finally, Brummitt opined that the number and weight of the pills containing methamphetamine did not indicate personal use.

At the close of the Commonwealth's case, the defense moved to strike all charges. The court denied the motion in relevant part. After closing argument, the jury convicted Wright of possession with intent to distribute cocaine and fentanyl, second offense; possession with intent

to distribute more than ten grams of methamphetamine; more than one-half ounce but less than five pounds of marijuana; and possession of more than one pound of marijuana and/or a Schedule II controlled substance while in possession of a firearm.  This appeal follows.

ANALYSIS

Wright challenges all his convictions primarily on the ground that the evidence did not prove he constructively possessed any of the drugs[2] or firearms.  Wright also maintains that the evidence did not prove that he intended to distribute the marijuana or Schedule II drugs.  We conclude that the evidence was sufficient to create factual issues for the jury to resolve.

On appeal, we review the evidence "in the 'light most favorable' to the Commonwealth, the prevailing party in the trial court." *Hammer v. Commonwealth*, 74 Va. App. 225, 231 (2022) (quoting *Commonwealth v. Cady*, 300 Va. 325, 329 (2021)).  Doing so requires us to "discard the evidence of the accused in conflict with that of the Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences to be drawn therefrom." *Cady*, 300 Va. at 329 (quoting *Commonwealth v. Perkins*, 295 Va. 323, 324 (2018)).  "This deferential principle applies not only to 'matters of witness credibility' but also to the factfinder's 'interpretation of all of the evidence . . .' presented at trial." *Fary v. Commonwealth*, 77 Va. App. 331, 341 (2023) (en banc) (alteration in original) (quoting *Commonwealth v. Barney*, 302 Va. 84, 97 (2023)).  "If there is evidentiary support for the conviction, 'the reviewing court is not permitted to substitute its own judgment, even if its opinion might differ from the conclusions reached by the finder of fact at the trial.'" *Lucas v. Commonwealth*, 75 Va. App. 334, 342 (2022) (quoting *McGowan v. Commonwealth*, 72 Va. App. 513, 521 (2020)).

---

[2] Wright acknowledges, though, as he did in his motion to strike, that the evidence proved his possession of the marijuana found in the kitchen.

The principles governing constructive possession issues are equally well-settled. "Constructive possession may be shown by establishing that the [drug or firearm] was known to [the defendant] and subject to [his] dominion and control." *Lane v. Commonwealth*, 223 Va. 713, 716 (1982). Proof of "acts, statements, or conduct by the defendant or other facts and circumstances" may be adduced to establish such constructive possession. *Rawls v. Commonwealth*, 272 Va. 334, 349 (2006). The defendant's proximity to contraband and his occupancy of the premises where the contraband is found, while insufficient to give rise to a presumption of ownership, are nevertheless probative on this issue. *Id.* at 350; *Lane*, 223 Va. at 716. "Furthermore, the Commonwealth does not have to prove that possession was exclusive." *Rawls*, 272 Va. at 350. Likewise, the Commonwealth need not prove that there is "no possibility that someone else may have planted, discarded, abandoned or placed the drugs and paraphernalia" found during a search. *Brown v. Commonwealth*, 15 Va. App. 1, 10 (1992) (en banc). And the issue of constructive possession "'is largely a factual one,'" thereby giving the Commonwealth "the benefit of all inferences fairly deducible from the evidence." *Smallwood v. Commonwealth*, 278 Va. 625, 629, 631 (2009) (quoting *Ritter v. Commonwealth*, 210 Va. 732, 743 (1970)). *See also McArthur v. Commonwealth*, 72 Va. App. 352, 368 (2020).

The parties have cited numerous decisions to support their respective positions. These cases inform our review, but this appeal ultimately rises and falls on its own set of circumstances. Based on our review of these largely factual issues, we conclude that the record fairly supports the jury's verdict and accordingly affirm.

First, there is no dispute that Wright was in the house at the same time as the drugs and firearms. Indeed, he came out of the kitchen when the arrest team arrived. Investigator Foley immediately detected a strong odor of marijuana emanating from the kitchen. Wright also gave off "a strong smell of marijuana" and had $2,630 in his pants pocket. The majority of the drugs

and drug trafficking paraphernalia seized by the police during their execution of the search warrant were found in the kitchen. *See Smallwood*, 278 Va. at 628, 631-32 (holding that driver of vehicle constructively possessed handgun that was in "plain view" on "open console" between him and front-seat passenger). Of note, no one else was in the house or came there at any point while the police waited for the search warrant and then executed it.

This evidence that Wright was in the kitchen and in close proximity to numerous items, some in plain view, just before he went out to approach the police provided strong proof that he knew of the presence of those items and that they were subject to his dominion and control. Wright suggests that his proximity to the contraband in the kitchen was not a significant factor because he was "leaving the house." Foley, however, testified that Wright came out and approached him. Obviously, the jury was entitled to find that his exit from the residence was not happenstance but done to avoid being found in the kitchen with the incriminating items and in an attempt to persuade the officers not to search the home. *See Palmer v. Commonwealth*, 14 Va. App. 346, 348-49 (1992) ("[I]t is . . . universally conceded that the fact of an accused's flight, escape from custody, resistance to arrest, *concealment*, assumption of a false name, and *related conduct* are admissible as evidence of consciousness of guilt, and thus of guilt itself." (first alteration in original) (emphases added)).

On this point, Wright's reliance on *Cordon v. Commonwealth*, 280 Va. 691 (2010), and *Garland v. Commonwealth*, 225 Va. 182 (1983), to argue that the evidence did not prove his constructive possession is not persuasive. In *Cordon*, the defendant was not at the house or a bedroom where cocaine was found when the residence was searched. 280 Va. at 693, 696. Additionally, the defendant listed his address at a location in another city. *Id.* at 696. In *Garland*, even though the house that was searched had been "under police surveillance for some time prior to the search, Garland was not seen at or near it, and . . . [w]hen arrested, Garland had

no drugs in his possession, and he made no statement to the police." 225 Va. at 183-84. Although the Supreme Court concluded in *Garland* that the evidence proved only that the defendant "had occupied the premises at some time" and did not prove "current occupancy," the jury could reasonably have found here that Wright was occupying the house when the police executed the search warrant. *Id.* at 184.

Wright's reliance on *Drew v. Commonwealth*, 230 Va. 471 (1986), is similarly distinguishable. There, the police began to surveil a residence and within the next hour observed 22 people enter it, stay briefly, and then leave. *Id.* at 472. Two hours later officers arrived to execute a search warrant and saw the defendant standing outside in the street two houses down from the residence. *Id.* The Supreme Court reversed Drew's conviction for possession of cocaine with intent to distribute, pointing out that mere proximity was insufficient to prove dominion and control and that there was no "proof that he was inside the house when the 22 visitors entered." *Id.* at 473.[3] In contrast, the evidence clearly established that Wright was inside the home when the police arrived, and no other persons were present or subsequently came.

The jury also could have regarded Wright's words and conduct when the officers arrived as probative of his guilt. While the officers were awaiting the search warrant, Wright told Foley that there was no one else in the house. Wright later asked to speak with Foley and informed him that a safe was in the house containing about $15,000, $6,000 of which was his girlfriend's. Wright also admitted that there was marijuana in the house. Wright's statements proved to be accurate; indeed, marijuana was found in two rooms and the safe was found to contain $15,060. Wright also said that "I'm done and I'm going away for a long time." The jury could have viewed this as an admission of wrongdoing more serious than, for example, mere possession of

---

[3] In *Brown*, this Court distinguished *Drew* on this ground in affirming the defendant's conviction for possession of cocaine with intent to distribute. 15 Va. App. at 8.

marijuana.  Beyond this, Wright's awareness of such things as the safe containing substantial money in the house was strong evidence of his knowledge of the contraband and the fact that he was no interloper or transient who had no connection to the house or its contents.  *See Smallwood*, 278 Va. at 630 (holding that constructive possession may be established by a defendant's "statements . . . proving that [he] was aware of the presence and character of the [contraband] and that [it] was subject to his dominion and control").

Contrary to Wright's assertion that there was no evidence suggesting that he "was aware of, or attempting to hide the contraband," the jury could have reasonably viewed Wright's approaching Foley and offering to retrieve the marijuana from the house, in lieu of a search warrant, as an attempt to avoid detection of the other incriminating items.  Indeed, both the Supreme Court and this Court have relied on such evidence in holding that the evidence proved constructive possession of drugs.  For example, in *Lane*, the police were executing a search warrant of the defendant's home while she sat in a chair in the living room.  223 Va. at 716. Lane did nothing to attract their attention until an officer approached her chair, at which point she "became 'fidgetive' and exclaimed that 'there was nothing behind the chair.'"  *Id.*  In fact, a "large and valuable" amount of methaqualone pills was found behind the chair.  *Id.*  In upholding the defendant's conviction for possession with intent to distribute, the Supreme Court stated: "Clearly, these are the kinds of acts, statements, and conduct which tend to prove her knowledge of the presence and character of the contraband."  *Id.  See also Castaneda v. Commonwealth*, 7 Va. App. 574, 583 (1989) (en banc) (defendant's awareness of cocaine hidden in back seat of car he was driving partly proven by his "quickly direct[ing] the officer's attention away from the car's interior to the trunk" and then, unprompted, opening zipped duffle bag and displaying its contents).

The Supreme Court likewise has relied on a defendant's equivalent conduct in finding constructive possession of a firearm by a convicted felon. *Bolden v. Commonwealth*, 275 Va. 144 (2008), involved behavior much like Wright's. There, an officer came upon an illegally parked car in a hotel parking lot and approached it. *Id.* at 146. As he did, Bolden and the other occupant of the car got out, and Bolden walked toward the officer. Bolden dropped some rolling paper and a Ziploc bag appearing to contain cocaine. *Id.* The officer then arrested Bolden and subsequently discovered a loaded handgun in a plastic grocery bag in plain view near where Bolden had been sitting. *Id.* at 146-47. In holding that the evidence proved the defendant's constructive possession of the handgun, the Supreme Court stated that

> Bolden exited the vehicle along with the only other passenger, and
> Bolden attempted to contact the officer before the officer could get
> to the vehicle. The bag containing the gun was open and obvious
> to someone looking in the vehicle, and it was located in immediate
> proximity to where Bolden had been sitting.

*Id.* at 148-49. *See also Rawls*, 272 Va. at 350 ("substantial evidence" indicated that the bedroom where the firearm was found hidden under the mattress belonged to defendant; fact that he "immediately disclaimed ownership" of the room when police said they were there to arrest him for probation violation supported conclusion that he "was lying to conceal his guilt").

Here, the detection of the various items within the house buttressed the reasonableness of the jury's finding that Wright had constructively possessed the drugs and firearms. The evidence indicating that Wright had been in the kitchen moments before the police detected the strong smell of marijuana coming from it and his person and then recovered numerous incriminating items in that location pointed to his constructive possession of those items. In *Wilson v. Commonwealth*, 272 Va. 19, 27 (2006), the police recovered marijuana, cocaine, and a gun in the living room. Even though the defendant was in the kitchen when the police arrived, he "had to walk through the living room to reach the kitchen. Therefore, it is reasonable to infer that

- 10 -

Wilson was aware of the presence and character of the drugs in the living room." *Id. See also Hambury v. Commonwealth*, 3 Va. App. 435, 438 (1986) (fact that "[j]ust prior to the police entry," defendant was seated in kitchen where marijuana was found, coupled with his admission that it belonged to him, proved constructive possession).

In the kitchen the officers found a Glock handgun, numerous rounds of ammunition, equipment that could convert a handgun into an automatic firearm, pills containing methamphetamine, a plastic bag with "a chunky substance" determined to contain 7.3667 grams of cocaine, a Ziploc bag containing both 308.49 grams of cocaine hydrochloride and 25.155 grams of fentanyl, a plastic bag with a green powder analyzed to contain 1.9758 grams of methamphetamine, two plastic bags containing 650.77 grams (or a little over one pound) of marijuana, three digital scales, two cellphones, and plant material in a glass jar with 41.16 grams of marijuana. The officers also came upon paperwork in the kitchen bearing Wright's name, picture, and other biographical information.

While the bulk of the contraband was in the kitchen Wright left as the police were arriving, numerous other items proving his constructive possession of the drugs were found in other parts of the house. One bedroom had an open safe in a closet containing $15,060, ammunition, and two large bags containing "green plantlike material." Next to the safe was a black bag containing two firearms, four magazines, and ammunition. In the basement the officers found two handgun cases along with another magazine and ammunition, a rifle and a magazine with ten rounds under couch cushions, and camouflaged body armor hanging from a chair. The police discovered also in the basement a monitor that provided a live feed to a camera that faced the marijuana plants growing behind the home.

Wright's arguments as to why this mountain of evidence did not support the jury's finding that he possessed the various drugs and firearms are unavailing. Wright points to the

- 11 -

evidence that an EBT card bearing the name of Bianca Hairston was in the kitchen and that women's garments were also found in the bedroom and the bathroom. Apart from the fact that Wright was the sole individual the police encountered at the house, it is well established that possession need not be exclusive, and a defendant may even constructively possess contraband "owned by another." *Hamilton v. Commonwealth*, 16 Va. App. 751, 755-56 (1993) (quoting *Harrison v. Commonwealth*, 12 Va. App. 581, 585 (1991)). For example, in *Rawls* the defendant had four roommates. In upholding the defendant's conviction for possession of a firearm by a convicted felon, the Supreme Court stated that the Commonwealth was not obligated to prove his exclusive access to the bedroom where the firearm was found. *Rawls*, 272 Va. at 350. "[E]ven assuming that the jury believed that other individuals had access to Rawls' room, such access is only a single factor to be considered among all of the circumstances." *Id. See also Wilson*, 272 Va. at 27-28 (even though five other men were present during the search of the apartment, such evidence as the fact that the defendant had $1,755 and had walked through the living room where drugs were found proved constructive possession).

Wright also points to the fact that none of the drugs were in plain view. This fact, standing alone, does not demonstrate the insufficiency of the evidence. Many items were in plain view, including an open bag containing scales and a handgun, a cellphone, a glass jar containing marijuana, an open safe containing the money as well as ammunition, and marijuana, a monitor, and body armor. The drugs were found in various bags and a backpack that themselves were all plainly visible. Case law makes clear that such evidence may prove constructive possession. *See, e.g.*, *Rawls*, 272 Va. at 349-51 (defendant constructively possessed the firearm concealed under the bed mattress); *Lewis v. Commonwealth*, 76 Va. App. 92, 102-03 (2022) (finding that when truck was driven but not owned by defendant, evidence such as presence of his personal property in the truck proved his constructive possession of

methamphetamine in zippered duffle bag behind passenger seat); *Brown*, 15 Va. App. at 7-10 (defendant constructively possessed cocaine found in the zippered bag on the back floorboard of the car he had driven but that was registered to another person).

We further hold that the evidence fairly supported the jury's finding that Wright possessed the marijuana and firearms with the intent to distribute. Expert testimony is frequently offered to show the intent to distribute and along with other evidence may be sufficient to prove guilt. *See, e.g.*, *Askew v. Commonwealth*, 40 Va. App. 104, 111 (2003); *Shurbaji v. Commonwealth*, 18 Va. App. 415, 422 (1994). Here, Lieutenant Brummitt gave expert testimony that each of the drugs, including the marijuana, recovered during the search was inconsistent with personal use. Brummitt based his expert opinion on the quantity of each drug (which was more than the amount a user would typically possess), the digital scales, the cellphones, the body armor, the amount of money, and the methamphetamine in the form of tablets. Brummitt testified that the presence of firearms and body armor underscores the fact that "drug distribution is an inherently dangerous business." And large amounts of money are associated with drug distribution, which is "a cash business." Further, "evidence linking a defendant to drug distribution may be considered as one factor in determining whether he may have had a motive to possess a firearm." *Thomas v. Commonwealth*, 44 Va. App. 741, 755, *adopted upon reh'g en banc*, 45 Va. App. 811 (2005).

## CONCLUSION

For the foregoing reasons, the circuit court's judgment is affirmed.

*Affirmed.*