COURT OF APPEALS OF VIRGINIA

Present:   Judges Humphreys, Haley and Petty
Argued at Salem, Virginia


RAMAAN ALFRED BURTON

MEMORANDUM OPINION* BY
v.        Record No. 0695-06-3                   JUDGE JAMES W. HALEY, JR.
                                                 MAY 29, 2007
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF DANVILLE
Joseph W. Milam, Jr., Judge

Joseph R. Winston, Special Appellate Counsel (Office of Appellate
Defender, on briefs), for appellant.

Jonathan M. Larcomb, Assistant Attorney General (Robert F.
McDonnell, Attorney General, on brief), for appellee.


Ramaan Alfred Burton ("appellant") was convicted by a jury of one count of cocaine

possession in violation of Code § 18.2-250(A).[1]  He maintains that the evidence is insufficient

for conviction and that the trial court erred in denying his renewed motion to strike.  We affirm.

STATEMENT OF FACTS

On July 7, 2005, at approximately 2:00 a.m., Danville Police Officer E.K. Thompson

("Officer Thompson") observed a green Lexus fail to stop at a stop sign in the City of Danville.

He subsequently pulled the car over, and appellant was found to be the driver.  There was also a

front seat passenger in the car at the time of the stop.

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] The Code reads in pertinent part as follows:  "It is unlawful for any person knowingly
or intentionally to possess a controlled substance . . . ."

Officer Thompson testified to appellant's conduct as follows: "When I approached the vehicle [appellant] was talking very rapidly. Wasn't completing sentences. Very nervous. It looked like he was on the verge of his whole body just shaking in a nervous fashion." Officer Thompson also testified to the level of nervousness as being "more than a normal person would do when I conduct a traffic stop."

Officer Thompson continued that, as he "was standing at the driver's door," he asked appellant if he had any guns or drugs and appellant said that he did not. Officer Thompson then asked appellant for consent to search his person, and appellant gave that consent.

Officer Thompson then described the subsequent series of events:

> A. I stepped back from the car. . . . I stayed with the car, allowing to step back so the door would clear me, in front of me.
>
> Q. Okay, and do you recall who opened the door? Was it you or [appellant]?
>
> A. [Appellant] did.
>
> Q. Okay. And he stepped out of the vehicle?
>
> A. That is correct.
>
> Q. Would you please describe for the . . . jury, what you saw once [appellant] stepped from the vehicle?
>
> A. When he opened the door I had a clear view of inside of the car compartment from that angle and I could see a clear plastic bag sitting beside the seat. It was not on . . . in the seat: it was beside the seat and the door jam. . . . And I . . . saw a white . . . substance inside that I'd seen before to be crack cocaine.

On re-cross, Officer Thompson was asked, "Did you have to do anything unusual to see [the bag] or . . . did you see it right when the door was opened?" He responded that "when the door opened up [he] could see it plain as day from [his] vantage point."

Officer Thompson explained that the plastic bag was located about "halfway to the body's length from the hip to the knee" and "around the pocket area." A field test, and the subsequent laboratory analysis, showed the substance contained in the bag to be cocaine. Officer Thompson testified that appellant did not indicate that the item recovered was his, but did say that the vehicle belonged to Areweeter Green ("Ms. Green") and that there was a bill of sale in the glove box proving the same.

Ms. Green was then called as a witness for the Commonwealth and asked to explain how appellant came to be in possession of her car:

> Q. Okay. Now on [July 7, 2005], had you let [appellant] borrow your car? Specifically the Lexus?
>
> A. Yes sir.
>
> Q. And about when was it that he borrowed it?
>
> A. He brought me something to eat before 12:00 o'clock that night, sir.
>
> Q. And when you say 12:00 o'clock, you mean 12:00 o'clock midnight?
>
> A. Yes sir.
>
> Q. Okay. And he had your car at that time?
>
> A. Yes sir.

Though she also acknowledged that she had loaned the vehicle to "about three or four other people" earlier in the day, Ms. Green denied the cocaine was hers and testified that the only thing in the car belonging to her was the bill of sale.

On cross-examination, Ms. Green was asked about a discussion with one Ms. Sherail Stokes ("Ms. Stokes"):

> Q. Okay. And have you discussed what had happened that evening with Ms. Stokes?

- 3 -

> A.  I only told [Ms. Stokes] what I told [the court] and anyone else I . . . I only had my papers of sales in that car. It was nothing else in that car of mine. It is the only thing we spoke about.
>
> Q.  Okay. So you deny admitting to Ms. Stokes that . . . that those were your . . . that was actually your cocaine?
>
> A.  Sir, I am not that illiterate to tell someone it's my cocaine if it's not mine.

Ms. Green also testified that she knew Ms. Stokes to be the mother of appellant's children.

Following the Commonwealth's evidence, the Court denied appellant's motion to strike finding the Commonwealth had presented a prima facie case.

For appellant, Ms. Stokes testified that Ms. Green "admitted to [her] that the drugs was hers" and that Ms. Green also "said before she had got out of the car she had placed [the drugs] between the door and the driver's seat."

On cross-examination, Ms. Stokes acknowledged that she had two children with appellant. She then admitted that she did not tell anyone else about Ms. Green's alleged confession to her, but that she had discussed the case with appellant.

In rebuttal, Officer Thompson testified that when he questioned Ms. Green about the drugs in the car, she reiterated that they were not hers and that "[she] did not leave anything in the car except the sales receipt."

At the conclusion of all evidence, appellant renewed his motion to strike. The court overruled the motion and allowed the case to proceed to the jury for resolution. The jury found appellant guilty of possession of cocaine and recommended a term of imprisonment of three years, which the trial court imposed.

STANDARD OF REVIEW

A motion to strike is "an attack upon the sufficiency of the evidence presented." Charles E. Friend, The Law of Evidence in Virginia § 1.4(C), at 12 (6th ed. 2003). See also McCary v. Commonwealth, 36 Va. App. 27, 40, 548 S.E.2d 239, 245 (2001).

Thus, when faced with a challenge to the sufficiency of the evidence, "we presume the judgment of the trial court to be correct and reverse only if the trial court's decision is plainly wrong or without evidence to support it." Kelly v. Commmonwealth, 41 Va. App. 250, 257, 584 S.E.2d 444, 447 (2003) (en banc). A jury convicted appellant. The verdict of a jury "cannot be overturned on appeal unless no 'rational trier of fact' could have come to the conclusion it did." Stevens v. Commonwealth, 46 Va. App. 234, 248, 616 S.E.2d 754, 761 (2005) (quoting Kelly, 41 Va. App. at 257, 584 S.E.2d at 447). See also Pease v. Commonwealth, 39 Va. App. 342, 355, 573 S.E.2d 272, 278 (2002) (en banc) ("We let the decision stand unless we conclude no rational juror could have reached that decision."), aff'd, 266 Va. 397, 588 S.E.2d 149 (2003); O'Connell v. Commonwealth, 48 Va. App. 719, 726, 634 S.E.2d 379, 382 (2006) ("This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." (quoting Jackson v. Virginia, 443 U.S. 307, 319 (1979))).

ANALYSIS

In Kromer v. Commonwealth, 45 Va. App. 812, 819-20, 613 S.E.2d 871, 874-75 (2005) (en banc), we succinctly summarized the principles applicable to the instant case:

> In order to convict a person of illegal possession of contraband, "proof of actual possession is not required; proof of constructive possession will suffice." Maye v. Commonwealth, 44 Va. App. 463, 483, 605 S.E.2d 353, 363 (2004). To support a conviction based upon constructive possession, "the Commonwealth must point to evidence of acts, statements, or conduct of the accused or other facts or circumstances which tend to show that the defendant was aware of both the presence and

character of the [contraband] and that it was subject to his dominion and control." Drew v. Commonwealth, 230 Va. 471, 473, 338 S.E.2d 844, 845 (1986) (citation omitted). Ownership or occupancy of the premises on which the contraband was found is a circumstance probative of possession. Archer v. Commonwealth, 26 Va. App. 1, 12, 492 S.E.2d 826, 832 (1997).

"Circumstantial evidence is as competent and is entitled to as much weight as direct evidence, provided it is sufficiently convincing to exclude every reasonable hypothesis except that of guilt." Breeden v. Commonwealth, 43 Va. App. 169, 177, 596 S.E.2d 563, 567 (2004). "The Commonwealth is not required to prove that there is no possibility that someone else may have planted, discarded, abandoned or placed the [contraband]" where the contraband is discovered. Brown v. Commonwealth, 15 Va. App. 1, 10, 421 S.E.2d 877, 883 (1992) (en banc). "To resolve the issue, the Court must consider the totality of the circumstances established by the evidence." Williams v. Commonwealth, 42 Va. App. 723, 735, 594 S.E.2d 305, 311 (2004).

In arguing for the motion to strike at the conclusion of the Commonwealth's evidence, appellant's counsel stated that "The only thing the Commonwealth has at this point is . . . speculation based on proximity" and that "mere proximity is not enough for a constructive possession." While the latter is an accurate statement of the law, Eckhart v. Commonwealth, 222 Va. 447, 450, 281 S.E.2d 853, 855 (1981), we disagree with appellant's characterization of the evidence as being limited to proximity.

This Court has held:

In determining whether a defendant constructively possessed drugs, the defendant's proximity to the drugs and his occupancy of the vehicle must also be considered. Although mere proximity to the drugs is insufficient to establish possession, and occupancy of the vehicle does not give rise to a presumption of possession, Code § 18.2-250, both are factors which may be considered in determining whether a defendant possessed drugs.

Josephs v. Commonwealth, 10 Va. App. 87, 100, 390 S.E.2d 491, 498 (1990) (citations omitted).

See also Wilson v. Commonwealth, 272 Va. 19, 27, 630 S.E.2d 326, 330 (2006).

Here, with respect to proximity, appellant was driving the vehicle in which the drugs were found. The drugs were located "beside the seat" occupied by appellant, next to the "door jam" adjacent to that seat, and "halfway to the body's length from the hip to the knee . . . around [appellant's] pocket area." See Brown v. Commonwealth, 5 Va. App. 489, 492, 364 S.E.2d 773, 775 (1988) ("Brown was *within arm's reach* of the cocaine"); Williams v. Commonwealth, 42 Va. App. 723, 736, 594 S.E.2d 305, 312 (2004) ("The police discovered [the cocaine] 'sitting right on the edge [of the glove compartment] as soon as you opened' it. . . . The glove compartment was within Williams's reach."). Here, the drugs were contained "in a clear plastic bag" which was visible "plain as day" when the driver's door was opened. There is no evidence to suggest, and thus rebut an inference of knowledge of the drug's presence, that appellant entered the car and occupied the driver's seat except as would be normal and customary, by opening the driver's side door, an action which here made the cocaine necessarily visible.

We further note that, when stopped for the traffic violation, appellant was clearly nervous, talking rapidly, failing to complete his sentences, and was "on the verge of his whole body just shaking." We have noted such circumstantial conduct as evidence that an appellant knew of the character of a controlled substance. See Walker v. Commonwealth, 42 Va. App. 782, 792, 595 S.E.2d 30, 36 (2004) ("Appellant also appeared extremely nervous and was breathing very heavily."). The Supreme Court of Virginia has done likewise. See Lane v. Commonwealth, 223 Va. 713, 716, 292 S.E.2d 358, 360 (1982) (holding "when [the police officer] began to search in the area of the chair [the suspect] occupied, she became nervous").

Appellant offered no evidence rebutting the officer's testimony or offering any alternative explanation for his nervous behavior. Thus, it was reasonable for the jury to infer that appellant's conduct was the result of his awareness that there were illegal drugs in the car.

On brief, appellant argues that the evidence shows "multiple instances of access by others" to the vehicle and thus the drugs. He relies upon Huvar v. Commonwealth, 212 Va. 667, 187 S.E.2d 177 (1972), Haskins v. Commonwealth, 31 Va. App. 145, 521 S.E.2d 777 (1999), and Pemberton v. Commonwealth, 17 Va. App. 651, 440 S.E.2d 420 (1994), where the evidence of possession was found insufficient because multiple individuals had such access. We find this reliance misplaced. In Haskins, police found cocaine on a crumpled dollar bill behind a door to a hotel bathroom Haskins was exiting. "Numerous individuals" were located in an adjoining room with access to the bathroom. No other evidence linked Haskins to the cocaine. In Pemberton, the appellant, who was one of six people present, was standing next to a trashcan in a house in which he was a visitor when the police executed a search warrant. Drugs were found in the trashcan. Again, no other evidence linked Pemberton to the drugs. In Huvar, the appellant had arrived at a three-room apartment fifteen minutes before police found drugs hidden in various places. He was one of eleven individuals present. In reversing, the Court noted: "The only evidence which connects defendant with the drugs involved here is his presence in the apartment . . . ." Huvar, 212 Va. at 668, 187 S.E.2d at 178.

In the instant case only two individuals were present when the drugs were found—appellant and a passenger. Neither testified. Ms. Green testified she had lent the car to appellant at least two hours before he was stopped and that there was nothing of hers in the car but a bill of sale. Officer Thompson, in rebuttal, confirmed that Ms. Green told him precisely the same thing during his interview with her. Though Ms. Stokes, the mother of appellant's children, testified that Ms. Green told her the cocaine was hers, Ms. Green specifically denied ever so doing. The jury rejected Ms. Stokes' testimony and accepted Ms. Green's. It is the province of the jury to evaluate the credibility of witnesses. Belton v. Commonwealth, 200 Va. 5, 9, 104 S.E.2d 1, 4 (1958) ("[The jury has] the right to reject that part of the evidence believed by them to be untrue

and to accept that found by them to be true."). See also Bloom v. Commonwealth, 262 Va. 814, 821, 554 S.E.2d 84, 87 (2001); Phan v. Commonwealth, 258 Va. 506, 513, 521 S.E.2d 282, 286 (2001); Sandoval v. Commonwealth, 20 Va. App. 133, 138, 455 S.E.2d 730, 735 (1995).

We also distinguish the instant case from Coward v. Commonwealth, 48 Va. App. 653, 633 S.E.2d 752 (2006). In Coward, the drugs were "sitting on the console in between the driver's and passenger's seats" in an automobile driven by another and in which Coward was a front seat passenger. Id. at 656, 633 S.E.2d at 753. No other evidence established "any other facts or circumstances necessary to draw the legal conclusion that Coward was aware of the presence and character of the cocaine." Id. at 659, 633 S.E.2d at 754. Further, "There was no evidence regarding how long Coward had been in the car . . . [or] that the baggie would have been visible in the darkness of the passenger compartment . . . ." Id. at 660, 633 S.E.2d at 754-55. By contrast, here appellant had been in the car for at least two hours, the drugs were located next to his seat in the car (and would only be accessible to the passenger if he were to reach over and around appellant), the appellant was nervous, and the drugs were visible "plain as day" to anyone who opened the driver's side door.

Finally, "[t]he Commonwealth is not required to prove that there is no possibility that someone else may have planted, discarded, abandoned, or placed the drugs" in the area where they were found. Langston v. Commonwealth, 28 Va. App. 276, 286, 504 S.E.2d 380, 384 (1998). Moreover, the appellant would be "mistaken in stating that the Commonwealth, to sustain its burden, must exclude the possibility that others may have committed the crime." Fordham v. Commonwealth, 13 Va. App. 235, 239, 409 S.E.2d 829, 831 (1991).

CONCLUSION

We find that the confluence of circumstantial evidence in this case sufficed to show that appellant "was aware of both the presence and character of the [cocaine] and that it was subject

to his dominion and control." <u>Drew</u>, 230 Va. at 473, 338 S.E.2d at 845.[2]  Accordingly, the trial court properly overruled the renewed motion to strike and the decision of the jury is affirmed.

<u>Affirmed.</u>

---

[2] Further, we note the distinction between the applicable rule of law stated here in <u>Drew</u> and appellant's claim, on brief, that the Commonwealth was required to present some evidence that appellant actually *exercised* dominion and control over the recovered drugs.